[No. 3267–1–III. Division Three. March 11, 1980.]

PACIFIC CASCADE CORPORATION, *Appellant,* v. MORRIE G. NIMMER, ET AL, *Respondents.*

*David H. Binney, William H. Neukom,* and *Shidler, McBroom, Gates & Baldwin,* for appellant.

*Robert M. Brown* and *Brown, Thayer & Drummond,* for respondents.

McINTURFF, J.—The plaintiff, Pacific Cascade Corporation, appeals the dismissal of its action against the defendant, Morrie G. Nimmer, for breach of an agreement to enter into a ground lease.

Pacific Cascade Corporation (PCC), of Seattle, Washington, is engaged in the business of commercial real estate development. Its principal client, Modern Merchandising, Inc., operates "Jafco" stores throughout the Pacific Northwest. In March 1977, PCC, at the request of Modern Merchandising, began looking for a site for a new Jafco store in Spokane, Washington. Through a local real estate agent, PCC became interested in certain property, known as the Auto Vue Drive–In, owned by the defendant, Morrie G. Nimmer.

On April 15, Mr. Nimmer and the president of PCC, Joe Lane, met in Seattle, and negotiations commenced for the construction of a Jafco store on the Auto Vue property. Following a series of meetings in Seattle and Spokane, Mr. Lane wrote a letter to Mr. Nimmer on August 3, outlining three separate proposals for the development of the Auto Vue property. The letter provided in part:

*Proposal A.* We will lease the ground under the building (noted as Proposal A on the drawing) for $30,000 per year. We would like the right to install the parking lot in front at our expense and to have mutual cross–easements between the balance of the property and ours.

*Proposal B.* We will lease your entire property for $75,000 per year.

*Proposal C.* We will lease the Jafco property for $30,000 per year. We would joint venture the development of the balance of the property with you. . . .

In early September, Mr. Nimmer met with his attorney and his accountant to discuss the Lane proposals. He then wrote a letter to Mr. Lane expressing his general interest in proposal A, but suggested a 30–year lease term at $45,000 per year, subject to a 30 percent escalation every 5 years, and two 10–year options.

Mr. Nimmer and Mr. Lane met again in Seattle on September 15 to discuss the terms of the ground lease. Later that day, Mr. Lane prepared a letter for Mr. Nimmer pro-

posing more specific terms and options for the ground lease. Thereafter, the parties continued to exchange correspondence regarding an escalation clause and PCC's separate lease agreement with Modern Merchandising. On September 29, in response to a request from Mr. Lane, Mr. Nimmer prepared a letter of intent to lease a portion of his property to PCC.

At that point, PCC believed it had "struck a deal" with Mr. Nimmer and immediately "swung into action", making arrangements for a survey and soil test of the subject property. PCC also commenced negotiations for construction and financing for the proposed project. On October 24, PCC sent for Nimmer's review a "draft" of a proposed land lease. On December 12, he notified PCC that he would not lease his property. PCC contends this was a case of "Lessor's Remorse."

PCC subsequently acquired a replacement site for the Jafco store and construction of the new facility was completed sometime in 1978. PCC then commenced this action against Mr. Nimmer for breach of his agreement to enter into a lease, contending the cost of acquiring a replacement site was substantially more than the cost it would have incurred under the proposed ground lease with Mr. Nimmer.

The trial court, after weighing the evidence, dismissed PCC's complaint for damages, finding the parties' informal exchange of correspondence did not constitute an enforceable contract.

This appeal presents a classic problem of contract formation. PCC argues Mr. Nimmer's letter of intent dated September 29 incorporates all the essential terms for an agreement to enter into a lease. Mr. Nimmer contends otherwise.

 It is essential to the formation of a contract that the parties manifest to each other their mutual assent to

the same bargain at the same time.[1] Mutual assent generally takes the form of an offer and an acceptance. Restatement of Contracts § 22 (1932); 1 W. Jaeger, *S. Williston on Contracts* § 23 at 51 (3d ed. 1957). An offer consists of a promise to render a stated performance in exchange for a return promise being given. Restatement of Contracts § 24 (1932).

██ ██ "But an intention to do a thing is not a promise to do it." *Meissner v. Simpson Timber Co.,* 69 Wn.2d 949, 957, 421 P.2d 674 (1966). It is evidence of a future contractual intent, not the present contractual intent essential to an operative offer. L. Simpson, *Contracts* §§ 14, 15 at 14–18 (1954); A. Corbin, *Contracts* §§ 22, 29 (1957); 1 W. Jaeger, *S. Williston on Contracts* § 26 at 59 (3d ed. 1957). "An agreement to negotiate a contract in the future is nothing more than negotiations." *Johnson v. Star Iron & Steel Co.,* 9 Wn. App. 202, 206, 511 P.2d 1370 (1973); *Sandeman v. Sayres,* 50 Wn.2d 539, 541–42, 314 P.2d 428 (1957).

It is often difficult to draw an exact line between offers and preliminary negotiations.

[G]reat care should . . . be taken not to construe the conduct, declarations or letters of a party as proposals when they are intended only as preliminary negotiations. The question in such cases is, did the offerer mean to submit a proposition, or was he only settling the terms of an agreement on which he proposed to enter, after all its particulars are adjusted? If it is intended merely to start negotiations which may subsequently result in a contract, or is intended to call forth an offer from the one to whom it is addressed, its acceptance does not consummate a contract. The fact that the parties do intend a subsequent agreement to be made is strong evidence to show that they do not intend the previous negotiations to amount to any proposal or acceptance. An agreement, to be finally settled, must comprise all the terms which the parties intended to introduce into the agreement and

---

[1] *Joseph v. Donover Co.,* 261 F.2d 812 (9th Cir. 1958); *Strange & Co. v. Puget Sound Mach. Depot,* 176 Wash. 90, 98, 28 P.2d 111 (1934); *Swanson v. Holmquist,* 13 Wn. App. 939, 942, 539 P.2d 104 (1975); *Peoples Mortgage Co. v. Vista View Builders,* 6 Wn. App. 744, 747, 496 P.2d 354 (1972).

until the terms of a proposal are settled, the proposer is at liberty to retire from the bargain."

*Coleman v. St. Paul & Tacoma Lumber Co.,* 110 Wash. 259, 272, 188 P. 532 (1920), citing 1 *Elliott on Contracts* § 27 at 29 (1913); *Parks v. Kirkland Packing Co.,* 172 Wash. 450, 454, 20 P.2d 588 (1933).

If from a promise, or manifestation of intention, or from the circumstances existing at the time, the person to whom the promise or manifestation is addressed knows or has reason to know that the person making it does not intend it as an expression of his fixed purpose until he has given a *further expression of assent,* he has not made an offer.

(Italics ours.) Restatement of Contracts § 25 (1932).

Here, Mr. Nimmer's letter, dated September 29, which is said to constitute a binding agreement to enter into a lease, provided:

This letter will express our intent to lease a portion of our property on the site known as the Auto Vue drive in Theatre. This property to be used for the construction of a building to be leased to the Jafco Store.

The general terms of our agreement are as follows:

1. A 25 (Twenty Five) year lease at $30,000.00 per year with a ten (10) percent additional amount of any overage you might receive.

2. Seven (7) year options at $30,000.00 per year with additional amounts. [*sic*] to be based on a cost of living index.

The balance of the terms as outlined in your letter of 15 September 1977 seem to be in order.

*The above however, must remain subject to the appropiate* [*sic*] *documentation and signing.*

(Italics ours.)

Mr. Nimmer stated that he sent this letter at Mr. Lane's request, but did not consider himself bound to lease his property without a further expression of assent and the execution of the final written document. On October 24, PCC sent a letter to Mr. Nimmer which said:

Enclosed herewith please find the *"draft"* copy of the proposed land lease for the above mentioned site shich [*sic*] we previously discussed.

The pertinent date [*sic*] (rent, legal description, etc.) has not been entered at this time as we would like you and Mr. Brown [Mr. Nimmer's attorney] to review the basic terms and conditions prior to preparation of the final lease . . .

(Italics ours.) The enclosed draft lease for Mr. Nimmer's review was 58 typewritten pages in length and addressed a multitude of landlord–tenant rights and duties to be resolved by further negotiation.

In view of these facts, supported by the basic principles of contract formation, we find substantial evidence to support the court's conclusion that the parties' informal exchange of correspondence did not result in a contractual relationship between plaintiff and defendant.

Furthermore, as the court correctly concluded, the informal correspondence between the parties did not satisfy the requirements of the real property statute of frauds. RCW 64.04.010–.020.[2]

█ PCC argues Mr. Nimmer is estopped from raising the statute of frauds as a defense because there was justifiable reliance upon his letter of intent to lease. We disagree. The estoppel doctrine as it applies to the statute of frauds requires a promise.[3] Here, the letter expressed an intention, but not a promise, to negotiate a contract in the

---

[2]RCW 64.04.010:

"Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed . . ."

RCW 64.04.020:

"Every deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgments of deeds."

[3]*See* Restatement (Second) of Contracts § 217A, Supp. to Tent. Draft No. 4 (1969), recently adopted by the court in *Klinke v. Famous Recipe Fried Chicken, Inc.,* 24 Wn. App. 202, 212–15, 600 P.2d 1034 (1979), *review granted,* 93 Wn.2d 1003 (1980), which stated:

future, and was subject to the express stipulation that the parties' agreement be reduced to writing.

 Nor do we find any basis for relief from the requirements of the statute of frauds under the equitable doctrine of part performance. Application of this doctrine requires the contract be established by clear and unequivocal proof, leaving no doubt of the character, terms or existence of the contract.[4] In addition, although PCC conducted a survey and soil test for the Auto Vue property, at no time did it take possession of any part of the property, or make any improvements thereon, or tender the payment of any rentals to Mr. Nimmer.

 Finally, PCC argues it is entitled to recover damages under the theory of promissory estoppel. There are five prerequisites for recovery in promissory estoppel.

(1) A promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.

*Corbit v. J.I. Case Co.*, 70 Wn.2d 522, 539, 424 P.2d 290 (1967); Restatement of Contracts § 90 (1932).

As we have seen, "a promise is an expression of intention, but it is not every intention that can properly be called a promise." A. Corbin, *Contracts,* § 15 (1957). Here, Mr. Nimmer's expression of intention to lease his property in the future was not a legally binding promise. Thus, the first element of promissory estoppel, a promise, is missing. Even

Enforcement by Virtue of Action in Reliance

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action of forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

[4]*Miller v. McCamish*, 78 Wn.2d 821, 829, 479 P.2d 919 (1971); *Beckendorf v. Beckendorf*, 76 Wn.2d 457, 464, 457 P.2d 603 (1969); *Canterbury Shores Assocs. v. Lake Shore Properties, Inc.*, 18 Wn. App. 825, 829, 572 P.2d 742 (1977).

if we were to find there was a promise, its terms were expressly conditioned upon the subsequent execution of a written document incorporating the terms of the oral agreement. Since the parties failed to execute a written lease agreement, Mr. Nimmer's promised performance never became due. *See Corbit v. J.I. Case Co., supra* at 539–40; Restatement of Contracts § 91 (1932).

Judgment of the Superior Court is affirmed.

GREEN, C.J., and MUNSON, J., concur.

Reconsideration denied April 3, 1980.

Review denied by Supreme Court June 20, 1980.