**KEYSTONE LAND & DEVELOPMENT COMPANY, Plaintiff–counter–defendant–Appellant,**

v.

**XEROX CORPORATION, Defendant–counter–claimant–Appellee.**

No. 02–35847.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 2003.

Filed Dec. 31, 2003.

Eric Frimodt, Inslee, Best, Doezie & Ryder, P.S., Bellevue, WA, for the plaintiff/counter-defendant-appellant Keystone Land & Development Company.

Larry J. Smith, Graham & Dunn PC, Seattle, WA, for the defendant/counter-claimant-appellee Xerox Corporation.

Before TROTT, FISHER, and GOULD, Circuit Judges.

GOULD, Circuit Judge.

This diversity case arises from a contract dispute. Plaintiff Keystone Land & Development Company ("Keystone") claims that it formed two binding contracts with Defendant Xerox Corporation ("Xerox"): a contract to buy a building owned by Xerox, and a contract to negotiate the terms of a Purchase and Sale Agreement for that building. Keystone filed suit for breach of contract in Washington state court and, to secure its claims, Keystone

filed a *lis pendens* notice for the property. Xerox removed the case to federal court and filed a counterclaim for damages, and attorney's fees, caused by an allegedly improper *lis pendens*. The district court granted summary judgment to Xerox on its defense of the two contract claims asserted by Keystone, and also granted summary judgment to Xerox on its counterclaim. Keystone appeals these rulings. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the summary judgment dismissing Keystone's claim of a breach of contract to sell the building, and we reverse the summary judgment awarding damages to Xerox because of the *lis pendens*. In a companion published order, we certify to the Washington State Supreme Court the remaining dispositive question of state law before us, namely, whether Washington law may recognize a contract to negotiate in the circumstances presented by this case.

## I

In early 2001, Xerox decided to sell and leaseback its facility in Tukwila, Washington. Xerox hired Jones Lang LaSalle ("Jones Lang") and Kidder Matthews and Sanger ("Kidder Matthews") to sell the property. Xerox sent detailed information packets to prospective buyers, including Keystone. In a February 22, 2001 e-mail, Xerox requested a "signed Letter of Intent which includes the net purchase price and key deal points. . . ." Keystone, through its real estate broker, Broderick Group, sent a letter (the "Offer Letter") dated March 8, 2001, that made an "Offer to Purchase" the property. The letter had several contingencies, including the "Execution of a Purchase and Sale Agreement with [sic] thirty (30) days from the execution of this letter of intent." Kidder Matthews replied on April 4, 2001, thanking Keystone for the "Offer" and, as "directed by Xerox," requested that Keystone submit a "final and best offer" for the property that addressed

certain concerns. Keystone responded through a letter dated April 6, 2001 by increasing its offering price. Referencing the March 8 letter, the April 6 letter stated that Keystone was "prepared to proceed towards completion of a mutually acceptable Purchase and Sale Agreement." In an April 10 letter, Xerox's local brokers wrote that, subject to two modifications, Xerox was "prepared to negotiate a Purchase and Sale Agreement with Keystone," and that Xerox would "proceed immediately to draft" the Agreement if Keystone accepted the modifications. Keystone accepted the modifications on April 13.

Keystone prepared to inspect the property and Xerox's books and records concerning the property, reviewed documents, and arranged debt and equity financing. Xerox had delivered documents to Keystone and had hired legal counsel for drafting the Agreement. Xerox told Keystone that a draft was almost complete and would soon be ready for review. No employee of Keystone had discussed the transaction directly with any employee of Xerox. All communications to this point were between the parties' brokers.

Xerox had done minimal due diligence. Because Xerox had seen other prospective property sales collapse when lenders had backed out after learning that the deal included a leaseback to Xerox, it requested assurances from Keystone's lenders that financing would be available. Faced with vague answers given by an officer of Key Bank, Keystone's financier, Xerox became concerned about Keystone's suitability as purchaser and landlord.

On April 25, 2001, the City of Tukwila, the main competitor of Keystone for the property, submitted a revised proposal to buy the building for $500,000 more than Keystone offered. Xerox then decided to withdraw from negotiations with Keystone. That was the end of negotiations between Keystone and Xerox.

Keystone filed suit in state court on June 20, 2001 and recorded a *lis pendens* against the Tukwila facility. The action was removed by Xerox to the United States District Court for the Western District of Washington. Xerox filed a Fed. R.Civ.P. 12(b)(6) motion, asserting that the complaint did not state a claim. That motion was denied. Xerox then filed an answer on October 4, 2001, and added a counterclaim for damages from the *lis pendens* filing. Keystone released the *lis pendens* when it filed an amended complaint on January 18, 2002. On cross-motions for summary judgment, the district court granted Xerox's motion for summary judgment in defense of Keystone's suit on March 14, 2002. On July 12, 2002, the district court, addressing cross-motions for summary judgment on Xerox's counter-claim, awarded summary judgment to Xerox. The district court certified both orders as final and Keystone appealed both summary judgment orders.[1]

## II

■ We first address whether summary judgment was appropriate on Keystone's claim that Xerox breached a contract to sell the Tukwila facility. To survive summary judgment, Keystone must demonstrate disputed material facts regarding the existence of a contract to sell the Tukwila property.

■ Under Washington law, it is possible for parties to enter a binding contract even if the parties contemplate a more formal future document. *Loewi v. Long*, 76 Wash. 480, 484, 136 P. 673 (1913); *Fuller v. Ostruske*, 48 Wash.2d 802, 807, 296 P.2d 996 (1956). The party asserting the existence of the contract must prove that the terms of the contract are stated, agreed upon, and that the parties intended the terms to be a binding agreement before signing the formal document. *Loewi* at 484, 136 P. 673. Equally certain is that if the parties intended their legal obligations to be deferred until the execution of the formal writing, the preliminary writings and negotiations cannot constitute a contract. *Plumbing Shop, Inc. v. Pitts*, 67 Wash.2d 514, 520–21, 408 P.2d 382 (1965) (citing Restatement of Contracts § 26 cmt. a (1932)).

■■ The question of a party's intent turns on the objective manifestations of that intent. *Morris v. Maks*, 69 Wash. App. 865, 871–72, 850 P.2d 1357 (1993). Whether summary judgment for Xerox was appropriate turns on whether there is disputed evidence in the record, viewed in the light most favorable to Keystone, that would allow a rational jury to conclude that the parties intended their preliminary writings to be an enforceable agreement, with the future Purchase and Sale Agreement serving only to memorialize the parties' prior contractual obligations.[2]

We consider whether a rational fact-finder could find, on the evidence submit-

1. The district court's decision to grant summary judgment is reviewed de novo. *See Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir. 2002). We use the standard in Fed. R. Civ. Pro. 56(c). *See, e.g., Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054 (9th Cir. 1997). "[V]iewing the evidence in the light most favorable to the non-moving party," we must determine "whether there are any genuine issues of material fact" under the applicable substantive law. *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1221 (9th Cir.1999). We do not weigh the evidence, but are concerned whether a rational trier of fact *might* resolve the issues in favor of the non-moving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir.1987).

2. Under Washington contract law, extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent. *Berg v. Hudesman*, 115 Wash.2d 657, 667, 801 P.2d 222 (1990).

ted, that the parties intended a contract to exist as a result of the March 8, April 6, April 10, and April 13 letters. The four letters did not include specific language either disclaiming or supporting the formation of a contract. What is undisputed, however, is that the letters contemplated the future drafting of a Purchase and Sale Agreement.

■ Under Washington contract law, if parties contemplate drafting a later agreement, this is "strong evidence to show that they do not intend the previous negotiations to amount to any proposal or acceptance." *Pacific Cascade Corp. v. Nimmer*, 25 Wash.App. 552, 556, 608 P.2d 266 (1980) (quoting *Coleman v. St. Paul & Tacoma Lumber Co.*, 110 Wash. 259, 272, 188 P. 532 (1920)). This alone would be sufficient to find that the parties lacked the intent to contract based upon the four letters. *See Plumbing Shop*, 67 Wash.2d at 521, 408 P.2d 382 ("[I]f an intention is manifested in *any way* that legal obligations between the parties shall be deferred until the writing is made, the preliminary negotiations and agreements do not constitute a contract.") (citing Restatement of Contracts § 26 cmt. a (1932)) (emphasis added).

Further, the other language in these letters, even when viewed in a light most favorable to Keystone as non-moving party, does not support a finding of an intent to reach a binding contract in the preliminary exchange of views. The exchange of letters explicitly called for the creation of a future "binding" Purchase and Sale Agreement; to refer to the future agreement as "binding" implies that preliminary communications are not.

This case is strikingly similar to the decision in *Nimmer*, 25 Wash.App. 552, 608 P.2d 266. In *Nimmer*, a real estate developer gave Nimmer three proposals, and Nimmer expressed interest in one. Nimmer prepared a letter of intent[3] based on the proposal he liked. The developer thought a deal had been struck and sent Nimmer a draft lease. Nimmer did not sign the lease and the developer sued for breach of contract. The Washington Court of Appeals held that the correspondence did not contain any promises, and the letter of intent was "evidence of a future contractual intent." *Nimmer*, 25 Wash.App. at 556, 608 P.2d 266. The description of Washington law and the resulting decision in *Nimmer* persuade us that summary judgment for Xerox was appropriate. We reject the theory that a contract was formed to sell the building, for we think on that issue all of the evidence shows only a "future contractual intent."[4]

The conclusion that the letters do not provide evidence of an intent to form a contract to sell the building is reinforced by examining the context of the negotiations. It is undisputed that binding letters of intent to enter into land contracts executed by brokers are highly unusual. If preliminary letters between brokers, which refer only to an intent to enter a formal and binding Purchase and Sale Agreement, could effectuate a transfer of a mul-

---

**3.** Similarly, although the March 8 letter was titled an "Offer Letter," the text of the letter referred to itself as a "letter of intent."

**4.** *Nimmer* was apparently under appellate review after the trial court had reached a judgment on the contract claims after trial. The court noted that "the trial court weigh[ed] the evidence," and the appellate court found "substantial evidence to support the court's conclusion...." *Nimmer*, 25 Wash.App. at 555, 558, 608 P.2d 266. Although Keystone's claims of breach of an agreement to sell the building were resolved on summary judgment, the principles of Washington contract law discussed in *Nimmer* persuade us that the letter exchange of the parties here did not manifest a contractual intent to be bound before execution of the formal Purchase and Sale Agreement expressly contemplated in the letters.

ti-million dollar building, that would certainly be extraordinary. Moreover, the "Offer Letter" was submitted in response to Xerox's solicitation which called for a "Letter of Intent" and Xerox had instructed Keystone not to submit a draft Purchase and Sale Agreement in response to Xerox's solicitation. These facts, relevant under the "context" rule explained in *Berg v. Hudesman*, 115 Wash.2d 657, 667, 801 P.2d 222 (1990), reinforce that Keystone did not present evidence sufficient to raise a genuine issue of material fact on the parties' intent to contract to sell the building through the mere exchange of letters.

█ When we examine the four letters in their context, in a light most favorable to Keystone, we conclude that there is no basis from this evidence for a rational jury to find that Keystone and Xerox had entered a contract to sell the building. Summary judgment rejecting Keystone's claim of breach of contract to sell the building was appropriate and we affirm the district court on that issue.

### III

█ We next address Keystone's appeal challenging the summary judgment for Xerox on its counterclaim based upon Keystone's *lis pendens* filing. For Keystone to avoid judgment in favor of Xerox on the *lis pendens* counterclaim, Keystone must only demonstrate that it had a "substantial justification for filing the *lis pendens*." Wash. Rev.Code § 4.28.328. The only reported case interpreting this provision is *Richau v. Rayner*, 98 Wash.App. 190, 988 P.2d 1052 (1999). The *Richau* court held that the plaintiffs had no substantial justification for filing a *lis pendens* when the plaintiffs were aware that they did not have any legal right to the property claimed. *Richau* at 198, 988 P.2d 1052. The district court acknowledged that the issue of contract formation was difficult, and if the case were based only on that question, Keystone's *lis pendens* filing may have been substantially justified. However, the district court reasoned that Keystone should have known that the alleged contract violated the statute of frauds, making any potential contract unenforceable. Thus the district court concluded that the *lis pendens* filing was not substantially justified.

We take a different view of Washington law and conclude that the district court was mistaken in giving summary relief to Xerox on the counterclaim. It is true that if Keystone were able to demonstrate a contract, Washington's statute of frauds would have applied to the contract for the sale of real estate. *See* Wash. Rev.Code § 64.04.010. Keystone had a good faith position, however, that if there were a contract from the letter exchange, then it might be argued further that a provision of that contract was that Xerox was to prepare the Purchase and Sale Agreement. If so, Keystone could urge that Xerox be prevented by estoppel from relying on the statute of frauds to prevent enforcement of the underlying contract. *See Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wash.2d 255, 259–60, 616 P.2d 644 (1980) ("A party who promises, implicitly or explicitly, to make a memorandum of a contract ... and then breaks that promise, is estopped to interpose the statute ... [against one] who relied [on the promise] to his detriment.") (quoting *In re Estate of Nelson*, 85 Wash.2d 602, 610–11, 537 P.2d 765 (1975)).[5]

**5.** In *Klinke*, the Washington Supreme Court held that the defendant was estopped from raising the statute of frauds to defeat enforcement of an oral contract because the defendant had promised, but failed, to draft a writing that satisfied the statute of frauds. *Klinke* involved a person who gave up a job in Alaska and moved to the state of Washington to engage in a franchised business, only thereafter to have the franchisor disclaim the oral

■ The district court did not address the *Klinke* estoppel claim in the substantial justification inquiry. Given the possibility that Xerox could have been estopped from asserting the statute of frauds as a defense, whether Keystone had substantial justification for filing the *lis pendens* depends on the strength of the claim that there was a contract to sell the building in the first instance.[6] We have rejected this claim in our discussion above, but we have not said that there was no justification to assert the claim. Like the district court, we determine that the question of contract formation is difficult, and on that basis, adopt the view that Keystone had substantial justification for claiming the existence of a contract to sell the building, and conclude that summary judgment for Xerox on the *lis pendens* counterclaim was erroneous. We reverse the grant of summary judgment to Xerox on this issue.

■ We further conclude that in the unusual circumstances of this case, summary judgment should be entered in favor of Keystone on its motion for summary judgment on the counterclaim asserting damages from an alleged improper filing of the *lis pendens*.[7] To award summary judgment to Keystone on the *lis pendens* counterclaim, we must accept the facts alleged by Xerox and give Xerox all favorable inferences. *See infra* note 1. But even so, Xerox has not contested that in its letters it said it would draft the Purchase and Sale Agreement. Because there was substantial justification to bring the claim of breach of contract to sell the building, even though we reject that claim, and because on undisputed facts Keystone could assert an estoppel argument in good faith, even though we take no position whether it would have succeeded at trial if the contract claim were otherwise good, this case does not appear to be one where the remedy of damages for wrongful filing of a *lis*

---

contract based on the statute of frauds. Though it might have required an extension of *Klinke* to apply its stated rule in this case, on facts less compelling than those presented in *Klinke*, the relevant question for *lis pendens* liability is whether Keystone had a "substantial justification" for filing the *lis pendens*, not whether the underlying claim would necessarily succeed.

6. We recognize that Washington law requires a higher showing to award the remedy of specific performance of a breached land contract, as opposed to the remedy of an award of money damages for the breach. *See Kruse v. Hemp*, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993). It is arguable whether the asserted contract met all of the necessary requirements for specific performance. *See id.; Hubbell v. Ward*, 40 Wash.2d 779, 782–83, 246 P.2d 468 (1952). On the other hand, Keystone provided evidence that an escrow agent opined that "the letters contain all the essential terms required to complete closing of the sale of the Xerox building. . . ." We conclude that, even if Keystone might not have prevailed at trial in gaining specific performance, it had sufficient chance so that

substantial justification existed for filing the *lis pendens*.

7. Although Keystone did not appeal the district court's order denying its cross motion for summary judgment, we may properly grant summary judgment to Keystone based upon our review of Xerox's summary judgment motion. *See Lawyers Title Ins. Corp. v. Honolulu Fed. Sav. & Loan Ass'n*, 900 F.2d 159, 164 (9th Cir.1990) (noting that where the record supports only one resolution of the factual issue, the reviewing court may order the trial court to enter judgment on that issue); *Martinez v. United States*, 669 F.2d 568, 570 (9th Cir.1981) ("[u]nder proper circumstances, an appellate court may order the district court to enter summary judgment for the non-moving party."). Though we recognize that this approach is, and ought to be, a relatively rare phenomenon, *see E.C. Ernst, Inc. v. General Motors Corp.*, 537 F.2d 105, 109 (5th Cir. 1976), because there were cross-motions for summary judgment before the district court, we are confident that the record has been sufficiently developed by both parties to permit our conclusion that the record supports directing summary judgment for Keystone.

*pendens* should be awarded. We hold that Keystone is entitled to summary judgment on Xerox's counterclaim, and we instruct the district court on remand to enter summary judgment for Keystone, dismissing the *lis pendens* claim.

## IV

We affirm the district court's order granting summary judgment to Xerox on Keystone's claim for breach of contract to sell the building. We reverse the district court's order granting summary judgment to Xerox on its *lis pendens* counterclaim; on remand, the district court is instructed to enter summary judgment in favor of Keystone on the *lis pendens* counterclaim.

We stay the issuance of the mandate and retain control of the case until we resolve the final issue presented in the companion certification order.[8]

**AFFIRMED IN PART, REVERSED IN PART WITH INSTRUCTIONS.**

---

8. With regard to the issues decided in this opinion, the normal rules governing petitions for rehearing and petitions for rehearing en banc shall be applicable.