**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES POSTAL SERVICE, *Plaintiff-Appellee*, v. LORRAINE ESTER, *Defendant*, and BELLEVUE POST OFFICE LLC, *Defendant-Appellant.* | No. 14-35100 D.C. No. 2:13-cv-00115-MJP OPINION |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted July 6, 2016
Seattle, Washington

Filed September 9, 2016

Before: A. WALLACE TASHIMA, M. MARGARET
McKEOWN, and MILAN D. SMITH, JR., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

# SUMMARY[*]

### Contracts

The panel affirmed the district court's order granting summary judgment to the United States Postal Service and compelling specific performance for the sale of property in a case involving a dispute over a lease and purchase option between Bellevue Post Office LLC and the Postal Service.

The Postal Service and Bellevue's predecessor-in-interest entered into an initial lease with options to renew the lease and an option to purchase a parcel of real property in Bellevue, Washington where the Postal Service has operated a branch Post Office location since 1963. When the Postal Service attempted to exercise the purchase option, Bellevue refused, arguing that the Postal Service had failed to strictly comply with the option requirements for the lease renewals.

The panel held that Washington law should be used as the applicable federal common law in the case. The panel applied Washington's heightened evidentiary standard for specific performance.

The panel held that even under Washington law's high standard for awarding specific performance, the Postal Service successfully provided "clear and unequivocal" evidence that it exercised its options to extend the term of the lease in strict compliance with the terms of the lease, and that the lease therefore continued to exist through the time it also

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

properly exercised its purchase option. The panel also held that the Postal Service provided persuasive evidence that its representatives had adequate contracting authority to validly exercise the various options in the lease. The panel agreed with the district court that the initial 1963 lease remained valid.

## COUNSEL

David R. West (argued) and Jeffrey Young, Garvey Schubert Barer, Seattle, Washington, for Defendant-Appellant.

Teal Luthy Miller (argued) and Christina Fogg, Assistant United States Attorneys; United States Attorney's Office, Seattle, Washington, for Plaintiff-Appellee.

## OPINION

M. SMITH, Circuit Judge:

This case involves a dispute over a lease and purchase option between the Bellevue Post Office LLC (Bellevue) and the United States Postal Service (USPS). In 1963, USPS and Bellevue's predecessor-in-interest entered into a twenty-year initial lease with five options to renew the lease and an option to purchase the property. When USPS attempted to exercise the purchase option, Bellevue refused to honor it, arguing that the lease had terminated as early as 1983 because USPS had failed to strictly comply with the option requirements for the lease renewals. The district court granted summary judgment for USPS and ordered specific performance of the sale of the property. We affirm.

**FACTS AND PRIOR PROCEEDINGS**

The lease in this dispute spans a fifty-year time period, during which the parties to the contract changed several times. The contractual relationship began in 1963, when Baugh Construction Company (Baugh) and USPS entered into a lease for a certain parcel of real property in Bellevue, Washington. Since that time, USPS has continuously operated a branch Post Office location on the property. The 1963 lease featured an initial twenty-year term, to be followed by options for one ten-year and four five-year renewal periods respectively. All told, USPS could lease the property for a total of fifty years, and the lease would expire in May 2013 if USPS exercised all of its options to extend the term of the lease. In order to exercise a renewal option, USPS was required to give the Lessor (which was defined in the 1963 lease as "Baugh Construction Company, . . . its successors, and assigns") written notice of its intent to exercise the next option at least 90 days before the end of the then lease term.

The lease also granted USPS an option to purchase the property at the end of the initial twenty-year lease term, at the end of each option term, and at the end of the full fifty-year term, assuming all the previous lease options had previously been exercised. At each potential purchase point, the purchase price was lower than the last one. At the end of the full fifty-year term, assuming all the options to extend the term of the lease had previously been exercised, USPS had the option to purchase the property for $300,000. Bellevue estimates the current value of the property to be in excess of $20,000,000.

The first change in the property's ownership occurred in 1964. In January 1964, Baugh transferred the property to

Edward Ester, Lorraine Ester, Josef Diamond, and Violett Diamond, who were each granted an undivided 25% interest in the property. In May of that year, despite Baugh's previous transfer of the property to the Esters and the Diamonds, Baugh purported to assign to John Hancock Life Insurance Company all rights to receive rent resulting from the lease. John Hancock thereupon executed a "Power of Attorney to Receive Rent," in which it purported to "appoint an attorney in fact to receive rents for [the] premises." Specifically, it appointed Edward Ester and Josef Diamond as its "true and lawful attorneys" to "ask, demand, collect, and receive from the Postmaster of Bellevue, Washington, all rents due for the period beginning the first day of June, 1964." Thus, as of June 1, 1964, USPS paid rent to Edward Ester and Josef Diamond as "attorney[s] in fact" for John Hancock.

In 1968, the Esters and the Diamonds, as the owners of the property, amended the lease with USPS. The amended lease defined the "Lessor" as "Edward R. Ester and Lorraine M. Ester, his wife; and Josef Diamond and Violett Diamond, his wife." The amendment lowered the annual rental payments in exchange for a promise from USPS to assume the obligation to pay property taxes. The amended lease stated that "[i]n all other respects, the said lease shall remain the same and is hereby confirmed."

In May 1978, Josef and Violett Diamond transferred their interests in the property to the trustees of four trusts they had established for the benefit of their grandchildren. After this transfer, the property was owned by Edward and Lorraine Ester, who each owned an undivided 25% interest in the property, and the four trusts for the Diamond grandchildren, each of which owned an undivided 12.5% interest in the property.

When the initial twenty-year lease term was to expire in May 1983, USPS had its first opportunity to extend the term of the lease. On February 4, 1982, USPS mailed a form renewal to "Edward R. Ester and Josef Diamond Attorneys-in-Fact under Lease." According to the 1964 Power of Attorney document, these individuals were authorized to receive rents from USPS. In the "remarks" section of the option exercise form, USPS requested that the recipient "[p]lease notify this office of any change in your address or the ownership of your property." The option notice was delivered (although it was physically received by someone with an illegible signature), and all parties proceeded for the next ten years as if the exercise of the option to extend the term of the lease had been effective. USPS paid rent; the appropriate owners apparently received that rent because no one complained that he, she, or it had failed to receive it; and the owners made no attempt to evict USPS or contest the renewed lease. Moreover, none of the owners notified USPS of the change in ownership to the Diamond family trusts, or instructed USPS to direct correspondence to anyone other than Edward Ester and Josef Diamond.

The 1983 notice to exercise its option to extend the term of the lease was signed on behalf of USPS by Gary Duncan, identified as the "Contracting Officer[,] Seattle Field Office." In the current litigation, Duncan submitted a declaration stating that he was the manager of that field office at the time he signed the notice. He could not recall the specific parameters of his contracting authority when he signed the option exercise notice, but testified that as part of his job he routinely confirmed that he was acting within his authority before signing contracts. He had no reason to believe that he did not follow that practice with regard to the 1983 option

exercise notice, and could not recall having ever exceeded his delegated authority while at that post.

In 1989, the trustees of each of the four Diamond family trusts transferred the trust's interest in the property to the grandchild who was the beneficiary of that trust, such that each grandchild became the owner of an undivided 12.5% interest in the property, free of trust. Effective upon these transfers, the property was owned by Edward and Lorraine Ester, each as to an undivided 25% interest, and the four Diamond grandchildren, each as to an undivided 12.5% interest. None of the owners (or Edward Ester and Josef Diamond as "attorneys-in-fact") notified USPS about any of the transfers.

In October 1992, a few months before the expiration of the ten-year option term, USPS sent another notice evincing its intention to exercise its option to extend the term of the lease for another five-year term, as permitted by the 1963 lease. This option exercise notice was addressed to "Edward R & Lorraine M Ester," and the four Diamond grandchildren—"Steven Foreman, Michelle Foreman, Cynthia L Diamond & Jonathan Diamond." This correctly named all of the owners at the time of the option exercise notice. The record indicates that USPS sent a single copy of this option exercise notice to Edward Ester's address, and that he signed the delivery receipt.

This time, the option exercise notice was signed by USPS employee John A. Logan, whose position was a "Principal Real Estate Specialist" in the Seattle Field Office. Logan submitted a declaration stating that during his tenure, he "held a Contracting Officer's warrant with monetary authority" to execute contracts on behalf of the government,

and that he "made it a point to be aware of" the extent of that authority. He did not recall whether he independently confirmed his authority to sign this particular option exercise notice, but it was his practice to do so. USPS could not produce Logan's contracting warrant under which he operated in 1992, but did provide his contracting warrant from 2002, when he worked in the Dallas office. USPS's Rule 30(b)(6) witness testified that the 2002 warrant, which gave Logan Level 1 contracting authority, was a reduction from his authority in previous positions. This indicated (albeit circumstantially) that Logan had a higher level of authority in 1992, and would have had authority to sign the option exercise notice.

As with the previous option exercise, all parties involved proceeded as if the option exercise had been effective. USPS remained in the property and paid rent and property taxes on the property for the next five years; the owners received the rent, and took no action seeking to evict USPS or contest the validity of the lease option exercise.

In January 1993, the four Diamond grandchildren transferred their interests in the property to Edward and Lorraine Ester, whereupon the Esters each became the owner of an undivided 50% interest in the property. There is no evidence in the record that the Esters or any other person informed USPS of the transfers by the Diamond grandchildren.

In November 1993, Edward Ester died, leaving his undivided 50% interest to his estate. Lorraine Ester was appointed as the personal representative of that estate. At the end of 1993, therefore, Lorraine Ester owned an undivided 50% interest in the property in her individual capacity, and

controlled the other undivided 50% interest in the property as the representative of Edward Ester's estate.

The then five-year lease term was set to expire in May 1998. In June 1997, USPS sent a notice to exercise its option to extend the term of the lease for another five years.[1] The notice was addressed to "Est of Edward R Ester and Lorraine M Ester, Steven Foreman, Michelle Foreman, Cynthia L Diamond, Jonathan Diamond." It was therefore addressed to both the current owners of the property (Edward Ester's estate and Lorraine Ester in her personal capacity), and also included the names of the Diamond grandchildren, who were no longer owners. Like it did with the previous option exercises, USPS sent a single copy of the renewal form to Lorraine Ester's address, where she signed the delivery receipt. As before, all parties proceeded as if the relevant lease option had been validly exercised, thereby extending the term of the lease for another five-year term.

In 1999, Lorraine Ester, as the personal representative of Edward Ester's estate, transferred the estate's undivided 50% interest in the property into a trust for the benefit of the Esters' descendants. At this point, Lorraine Ester owned an undivided 50% interest in the property individually, and controlled the other undivided 50% interest in the property as the trustee of the Ester Trust.

In April 2001, USPS sent another notice to exercise its option to extend the term of the lease for another five years,

---

[1] The 1997 notice was signed by Arthur Strange. Bellevue does not dispute that Strange had sufficient contracting authority to execute the option exercise notice on behalf of the government.

beginning in 2003.[2] The notice was addressed to "Lorraine Ester, Pers. Rep. Estate of Edward Ester, S. & M. Foreman / C. & J. Diamond." It was once again mailed to Lorraine Ester's address. Glenda Ester, Lorraine Ester's daughter-in-law, signed the delivery receipt.

In September 2005, USPS sent a notice to exercise its option to extend the term of the lease for a final five-year term, beginning in May 2008.[3] Just as with the previous notice in 2001, it was addressed to "Lorraine Ester, Pers. Rep. Estate of Edward Ester, S. & M. Foreman / C. & J. Diamond." The delivery receipt signature is illegible.

Once the final lease term extension option was exercised, thereby extending the lease term to May 2013, the 1963 lease, as amended, contained no more options to extend the term of the lease. Under the terms of that contract, however, USPS was entitled to exercise an option to purchase the property. The 1963 lease stated that the purchase option could be exercised by giving the "Lessor" notice of its intention to purchase at least one year in advance of the end of the lease term. In September 2008, several years before the 2012 option notice cut-off date, USPS sent a letter to "Lorraine Ester, Trustee," which purported to "constitute the Postal Service's written notice of exercising its option to purchase the fee simple title to the leased premises, including the underlying land for $300,000." The letter was received by

---

[2] The 2001 notice was signed by Marcus Nielsen. USPS has produced the contracting warrant that establishes he had the contracting authority to exercise the option to extend the term of the lease.

[3] The 2005 notice was signed by Garry Mattox, who undisputedly had contracting authority to sign the renewal.

Glenda Ester, who wrote "L.E." in the "printed name" field of the delivery receipt. Bellevue does not claim that the letter failed to reach Lorraine Ester.

In April 2012, just before the one-year notice deadline, USPS sent another letter, addressed to "Ms. Lorraine EsterTrustee," reminding her that it intended to exercise the purchase option. Glenda Ester again signed the receipt. The next month, in May 2012, Lorraine Ester transferred both her individual undivided 50% interest in the property and the undivided 50% interest of the Ester Trust to Bellevue Post Office, LLC.

In October 2012, more than four years after USPS's original notice to exercise its purchase option, counsel for Bellevue sent a letter to USPS stating that based on a review of the "lease history," he did "not agree that the Postal Service has any right to purchase the Property." Bellevue thus refused to honor the purchase option.

USPS sued for specific performance in the District Court for the Western District of Washington. Bellevue counterclaimed for holdover rent. After both sides undertook discovery, the parties filed cross-motions for summary judgment. Bellevue argued that the lease had terminated (and with it, all future options) as early as 1983, due to incomplete or inaccurate information in the name-and-address blocks of the notice forms and USPS's failure to send separate notices to each Lessor. It also argued that USPS had not adequately proven whether Duncan in 1983 and Logan in 1993 had sufficient contracting authority to exercise options to extend the term of the lease.

The district court granted summary judgment for USPS and ordered specific performance of the sale of the property. It ruled that "there is no material dispute that the postal service complied with its rent and other lease obligations," and that Bellevue's attempts to declare the contract void were "legally and factually incorrect." We affirm.

## ANALYSIS

### I.  Applicable Law

"[O]bligations to and rights of the United States under its contracts are governed exclusively by federal law." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988). In the absence of a governing federal statute, federal law is "of a content prescribed . . . by the courts—so-called 'federal common law.'" *Id.* This does not mean that we ignore Washington state contract law; to the contrary. "[T]he Supreme Court has encouraged the adoption of state law as the federal law applicable within [the relevant] state." *Dupnik v. United States*, 848 F.2d 1476, 1481 (9th Cir. 1988). State law should be displaced only when "significant conflict exists between an identifiable federal policy or interest and the operation of state law, or the application of state law would frustrate specific objectives of federal legislation." *Boyle*, 487 U.S. at 507 (citations, quotation marks, and alterations omitted).

Bellevue asks us to apply Washington law, which "requires a higher showing to award the remedy of specific performance of a breached land contract, as opposed to the remedy of an award of money damages for the breach." *Keystone Land & Dev. Co. v. Xerox Corp.*, 353 F.3d 1070, 1076 n.6 (9th Cir. 2003). A plaintiff must provide "clear and

unequivocal evidence that leaves no doubt as to the terms, character, and existence of the contract." *Kruse v. Hemp*, 853 P.2d 1373, 1377 (Wash. 1993) (en banc) (quotation marks omitted). We agree that Washington law should be used as the applicable federal common law in this case. Lease contracts for the postal service do not inherently implicate "clear and substantial interests of the National Government, which cannot be served consistently with respect for . . . state interests." *Dupnik*, 848 F.2d at 1481 (quoting *United States v. Yazell*, 382 U.S. 341, 352 (1966)). No specific federal interests (other than the generalized interest in USPS shouldering a lighter burden in this particular litigation) will "suffer major damage if the state law is applied." *See id.* Thus, we apply Washington's heightened evidentiary standard for specific performance. We hold, nevertheless, that USPS has shown clearly and unequivocally that it has a contractual right to purchase the property.

## II.  Options

"Well-known principles of contract law guide us in the proper construction of federal contracts." *Wapato Heritage, LLC v. United States*, 637 F.3d 1033, 1039 (9th Cir. 2011). "A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999).

Under general principles of contract law, an optionee to an option contract can only exercise the option "strictly in accordance with its terms." 15 Williston on Contracts § 46:12 (4th ed. 2010); *see New Eng. Tank Indus. of N.H., Inc. v. United States*, 861 F.2d 685, 687 (Fed. Cir. 1988) ("It is well

settled that to properly exercise [an] option, the government's acceptance of the offer had to be unconditional and in exact accord with the terms of the contract being renewed."); *Lockheed Martin IR Imaging Sys., Inc. v. West*, 108 F.3d 319, 323 (Fed Cir. 1997) (similar) (citing Corbin on Contracts, § 284 (1963)).[4]

Thus, Bellevue is correct about one thing: USPS must be held to the exact terms of the 1963 lease, as amended. However, we note that this standard of exactitude is calibrated to what the contract actually requires, not an indefinite standard of scrupulous paperwork or best practices. *See Lockheed*, 108 F.3d at 323 ("[A]n option, like any contract, is circumscribed by its terms.").

The terms of the 1963 lease require USPS's notice to be "given in writing to the Lessor."[5] Bellevue contends that the

---

[4] USPS suggests that the strict compliance requirement only applies to the option to purchase the property, and is irrelevant to the "earlier duties under the contract, including its lease-renewal notices." This is not the case; the requirement applies to contractual options generally, including options to renew a lease. *See New Eng. Tanks*, 861 F.2d at 687; *Wapato Heritage*, 637 F.3d at 1033.

[5] "Lessor" is defined as "Baugh Construction Company, . . . its successors, and assigns." Bellevue argued to the district court below, and implies in its appellate briefing that perhaps the proper meaning of the"Lessor" for option purposes is as it was defined in the 1968 amendment: "Edward R. Ester and Lorraine Ester, his wife; and Josef Diamond and Violett Diamond, his wife." According to this interpretation, USPS would have had to give notice to these four individuals and *not* their successors and assigns, apparently even after they transferred their interests in the property or passed away. This is not a reasonable interpretation of the contract language. As an initial matter, it conflicts with the clear language of the 1968 amendment, in which the parties made one specific change with regard to the payment of rent and property taxes

1983 lease renewal was ineffective because it was addressed to "Edward R. Ester and Josef Diamond Attorneys-in-Fact under Lease," when the actual Lessors at the time were Edward Ester, Lorraine Ester, and the four Diamond trusts. It contends that because the delivery receipt is illegible, USPS is unable to "prove actual receipt . . . by either of its two addressees, Edward Ester or Josef Diamond." It further contends that the 1993 lease renewal was ineffective because although the notice named all of the Lessors, USPS only sent a single notice rather than separate copies to each owner, and the delivery receipt was signed only by Edward Ester. Similarly, the 1998 renewal notice included the names of the Diamond grandchildren, even though they had transferred their interests in the property a few years earlier. The 2001 renewal notice, addressed to "Lorraine Ester, Pers. Rep. Estate of Edward Ester" and the four Diamond grandchildren also does not specifically note that Lorraine Ester was a Lessor in her individual capacity. Finally, in 2005, USPS's notice was addressed to "Lorraine Ester, Pers. Rep. Estate of Edward Ester" and the four Diamond grandchildren, instead of Lorraine Ester in her personal capacity and Lorraine Ester as the trustee of the Ester Trust.

According to Bellevue, each and every one of the "attempted" exercises of an option to extend the term of the lease was fatal to the continuing viability of the lease, because notice was not "given in writing to the Lessor." We disagree. The option terms do not require that USPS prepare multiple copies of the written notice to be specifically

---

and agreed that "in all other respects, the [1963] lease shall remain the same and is hereby confirmed." Moreover, such a result would be, as the district court noted, an "absurdity."

delivered to each and every Lessor.[6] The lease does not specify whether the notice of exercise must be delivered by hand service or certified mail; whether it can be delivered to an agent, attorney, or employee; whether a Lessor must personally sign the delivery receipt; or that the name-and-address box on the form notice must accurately state the names and legal role of each and every Lessor. It only says that written notice must be "given in writing to the Lessor." A reasonable interpretation of the word "given" does not imply the degree of punctiliousness Bellevue insists is required. *See Give,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1961) (third definition, "to put into the possession of another for his use"); *give*, THE AMERICAN HERITAGE DICTIONARY (4th ed. 2000) (fourth definition, "to convey by a physical action"). For each lease renewal, USPS "gave" written notice via certified mail of its intention to exercise its option to at least one person who was a Lessor at the time of the renewal, and Bellevue has provided no evidence indicating that the notice was not delivered to, or put into the possession of, all Lessors accordingly.

---

[6] Our opinion in *Wapato Heritage* does not create such a requirement. In *Wapato*, the Department of the Interior held land in trust on behalf of an Indian tribe, and executed a lease on behalf of the trust beneficiaries. 637 F.3d at 1035. The lease stated that the lessee had an option to renew the lease "provided that notice of the exercise of such option shall be given by the Lessee to the Lessor *and the Secretary* in writing." *Id.* (emphasis added). The lessee only provided notice to the Secretary, and not the Lessor. We held that the contract unambiguously required the lessee to give written notice to both the Lessor and the Secretary (and that the Secretary was, by implication, not the Lessor). *Id.* at 1040. It failed to do so, and the option was therefore invalid. *Id.* The contract here, unlike in *Wapato*, did not by its terms require separate notice to be given to more than one party.

Furthermore, the parties' actions over the decades unambiguously demonstrate that the notice *was* given to the Lessors, because everyone involved continued to perform the lease as agreed upon for thirty years after the first alleged defect. USPS continued to pay rent, which Bellevue and its predecessors continued to accept. USPS continued to pay property taxes on Bellevue's behalf (which is consistent with the lease as amended in 1968, and not a tenancy at sufferance). In 1987, the owners refused USPS's request that they paint the building on the property, and an attorney acting on behalf of Edward Ester and Josef Diamond represented that USPS's remedies in the matter were "limited to terminating the lease." The owners further affirmed the existence of the lease when they twice offered USPS $1,000,000 to strike the purchase option from the lease. Lorraine Ester's son John described the purchase offer in a press interview with the *King County Journal*. All of this is strong circumstantial evidence that at each juncture, USPS's written notice was effectively "given" to the "Lessors." *See Dynamics Corp. of Am. v. United States*, 389 F.2d 424, 430 (Ct. Cl. 1968) ("[T]he practical interpretation of a contract, as shown by the conduct of the parties, is of great weight in interpreting the contract.").

Thus, there is no material dispute that all Lessors were "given" written notice, as evidenced by their continued recognition of the lease for nearly thirty years after the first alleged termination. Even under Washington law's high standard for awarding specific performance, USPS successfully provided "clear and unequivocal evidence" that it exercised its options to extend the term of the lease in strict compliance with the terms of the lease, and that the lease therefore continued to exist through the time it also properly exercised its purchase option. *See Kruse*, 853 P.2d at 1377.

## III.    Contracting Authority

The federal government cannot enter into valid and binding contracts except through the actions of "a government representative having actual authority to bind the United States in contract." *Keehn v. United States*, 110 Fed. Cl. 306, 326–27 (2013) (quoting *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003)). Bellevue argues that the 1963 lease terminated in 1983 or 1993, because USPS did not provide "clear and convincing evidence" that Duncan and Logan had adequate contracting authority to validly exercise the various options in the lease.

USPS could not produce a contracting warrant for either Duncan or Logan during the relevant time periods, which is unsurprising for documents of that age. However, none of the law cited by Bellevue indicates that the government must produce the actual warrant to show that an officer had sufficient authority to contract.[7] USPS produced ample evidence that both Duncan and Logan were authorized to renew the lease. Each submitted a declaration stating that he had contracting authority, that he was in the habit of confirming the limits of his authority before signing contracts, and that he had no reason to believe he would have

---

[7] Bellevue principally relies on *U.S. Postal Service v. Sunshine Development Inc.*, 674 F. Supp. 2d 619 (M.D. Pa. 2009). In that case (which, of course, is not binding on this court), a postal service employee who undisputedly lacked authority signed a lease renewal. *Id.* at 623. After the time for exercising the lease option had lapsed, an officer with proper authority attempted to retroactively ratify the unauthorized transaction. *Id.* at 627. The court ruled that the lease was not validly renewed. *Id* at 628. *Sunshine* does not stand for the proposition that a government agency must produce an actual contract warrant in order to prove that an employee had the requisite authority to enter into a contract.

acted in excess of his authority. Arthur Strange provided further testimony that, based on Logan's contracting warrant from 2002, Logan would have had even higher authority while he worked in the Seattle Field office in the early nineties. USPS bore its initial burden on summary judgment to identify record evidence that "demonstrate[s] the absence of a genuine issue of material fact" on this issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986) (quoting Fed R. Civ. P. 56(e)). Once USPS made this showing, Bellevue was required to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). This required Bellevue to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Bellevue has not met that burden. It simply speculates that Duncan or Logan might not have had the requisite authority, and notes that unauthorized transactions by federal employees do occur. That is not enough to defeat summary judgment where USPS has provided persuasive (albeit not conclusive) evidence that each had appropriate contracting authority.

We agree with the district court that the 1963 lease remained valid. The owners continuously treated the lease, the various lease options, and the purchase option as valid and enforceable for fifty years, and reaped the benefit of their bargain. Now that the term of the lease has ended, and they are faced with losing a valuable piece of property at a price well below its current value, they wish to avoid its burdens. This they cannot do.

# CONCLUSION

The district court's order granting summary judgment to USPS and compelling specific performance for the sale of the property is AFFIRMED.