[No. 11936. Department Two. July 22, 1914.]

O. S. ARBOGAST *et al.*, *Appellants*, v. ANDREW JOHNSON *et al.*, *Respondents.*[1]

FRAUDS, STATUTE OF—CONTRACTS FOR SALE OF REAL ESTATE—EXE-
CUTION—SUFFICIENCY. A memorandum of purchase of certain de-
scribed real estate, signed by the purchaser, "subject to the owner's
approval," but not signed by the owner, nor even disclosing his
name though signed by an agent authorized orally to find a pur-
chaser, does not constitute a contract of sale of land within the
terms of Rem. & Bal. Code, §§ 8745, 8746, requiring contracts for
the conveyance of real estate to be "in writing signed by the party
bound thereby;" since the purchaser is the only party bound by the
terms of the contract.

SAME—SALE OF REAL ESTATE—CONTRACT OF AGENT—RATIFICATION.
Ratification of a sale of real estate made by an agent for the owner,
which was unenforceable under the statute of frauds, is not shown
by the act of the owner in receiving the earnest money paid to his
agent by the purchaser who was a tenant of the owner, but declining
to approve the sale and applying the money on the rent due, nor by
the further fact that the owner gave his agent an abstract of title
to deliver to the prospective purchaser, coupled with the under-
standing that it was not to be delivered until the payment of an
additional specified sum as earnest money.

SAME—PLEADINGS—ISSUES AND PROOF. A party to an action may
invoke the application of the statute of frauds without pleading it,
where the contract in issue is set out in full in the pleadings and
shows on its face that it is such a contract as is required by law to
be in writing.

Appeal from a judgment of the superior court for King
county, French, J., entered March 13, 1914, upon findings
in favor of the defendants, in an action to quiet title, tried
to the court. Reversed.

*Edward Judd*, for appellants.

*William D. Covington* and *Geo. A. Meagher*, for respond-
ents.

[1]Reported in 141 Pac. 1140.

PARKER, J.—The plaintiffs commenced this action in the superior court for King county, to recover from the defendants the possession of lot 9, block 14, Bigelow addition to Seattle, to recover damages for withholding possession, and to quiet title as against the claim of defendants made under an earnest money receipt purporting to be a contract for the sale of the lot to them by the plaintiffs' grantor. The defendants answered, setting up their claimed right to purchase the lot under the earnest money receipt. A trial before the court resulted in findings and judgment in favor of the defendants, from which the plaintiffs have appealed.

On, and for some months prior to, May 14, 1913, the lot here in question was owned by A. C. Gould, and occupied by respondents as his tenants, at a rental of $15 per month. On that date, and for some time prior thereto, O. S. Arbogast was engaged in the real estate agency and rent collection business. He collected, from time to time, for Gould, rent due to him from respondents. He was also authorized by Gould to find a purchaser for the lot, though he was not so authorized in writing. On that day, respondent Andrew Johnson paid to appellant O. S. Arbogast $25, when a paper was made out and signed by them, reading as follows, so far as it is here necessary to notice its contents:

"Earnest Money Receipt.
          "Seattle, Wash., May 14, 1913.
"Received from Andrew Johnson the sum of $25 to apply on this contract for the purchase of the following described real estate, situate in King county, Washington, to wit: lot nine block fourteen Bigelow Addition to City of Seattle . . . [here follow terms of payment of balance of purchase price, etc.]
"........................Owner
          "By O. S. Arbogast, Agent
"Subject to the owner's approval, I hereby agree to the above provisions.          Andrew Johnson, Purchaser."

This paper does not contain the name of the owner of the lot, nor any reference to the owner other than that shown in

the above quotation therefrom. Thereafter, on June 30, 1913, Gould, the owner, conveyed the lot by warranty deed to appellants Arbogast and wife. Thereafter, on August 11, 1913, respondent Andrew Johnson caused this writing to be recorded in the office of the auditor of King county.

One of the questions here presented is as to the binding force of this writing, viewed as a contract for the conveyance of the lot, in the light of our statutes requiring contracts for the conveyance of real estate to "be in writing, signed by the party bound thereby." Rem. & Bal. Code, §§ 8745, 8746 (P. C. 143 §§ 1, 3). That this writing was not signed by the owner of the lot, nor even disclosed who the owner to be bound is, we think, too plain for argument. It is equally plain, from the evidence, we think, that it was not signed by Arbogast for the owner by virtue of any previous authorization from the owner. Indeed, upon its face, it plainly shows that it was to be of no force in any event until approved by the owner. This being the condition of the writing at the time of its execution, we are constrained to regard it as wholly wanting in having any party thereto who is bound to convey the lot. It does not, upon its face, purport to bind anyone except respondent Andrew Johnson, and not even him until approved by the owner.

In *Grafton v. Cummings*, 99 U. S. 100, there was involved a writing the same as this in substance, so far as its force in the light of the statute of frauds is concerned, there being no owner named in the writing, though it was signed by the purchaser and indorsed "A. R. Walker, auctioneer and agent for both parties;" the sale having been an auction sale in behalf of an estate. Disposing of the owner's right to recover the purchase price from the purchaser who signed the writing, Justice Miller, speaking for the court, said:

"The distinct objection to the instrument, as so presented, is, that the other party to the contract of sale is not named in it, and can only be supplied by parol testimony. The statute not only requires that the agreement on which the action

is brought, or some memorandum thereof, shall be signed by the party to be charged, but that the agreement or memorandum shall be in writing. In an agreement of sale there can be no contract without both a vendor and a vendee. There can be no purchase without a seller. There must be a sufficient description of the thing sold and of the price to be paid for it. It is, therefore, an essential element of a contract in writing, that it shall contain within itself a description of the thing sold, by which it can be known or identified, of the price to be paid for it, of the party who sells it, and the party who buys it. There is a defect in this memorandum in giving no indication of the party who sells. If Grafton was bound to purchase, it was because somebody was bound to sell. If he was bound to pay, somebody was bound to receive the money and to deliver the consideration for the price so paid.

"There can be no bargain without two parties. There can be no valid agreement in writing without these parties are named in such manner that some one whom he can reach is known to the other to be bound also. No one is bound in this paper to sell the Glen House, or to convey it. No one is mentioned as the owner, or the other party to this contract. Let it be understood that we are not discussing the question of mutuality in the obligation, for it may be true that if a vendor was named in this paper, the offer to perform on his part would bind the party who did sign. But Grafton did not agree to buy this property of anybody who might be found able and willing to furnish him a title. He was making a contract which required a vendor and a vendee at the time it was made, and he is liable only to that vendor. The name of that vendor, or some designation of him which could be recognized without parol proof extraneous to the instrument, was an essential part of that instrument to its validity."

This principle is, to our minds, clearly applicable to the problem here presented. We think it is decisive against the validity and binding force of this writing at the time of its execution.

Assuming, now, for argument's sake, that this writing was such as could be rendered binding and enforceable by its subsequent ratification upon the part of the owner of the lot,

Was it ratified by him? We are unable to decide this question in favor of respondents, in the light of the evidence introduced. There was evidence introduced upon the trial tending to show that Gould, the owner, received $25 from his agent, appellant Arbogast, following the signing of this writing by Arbogast and Johnson, knowing that it had been so signed; but at that time Gould declined to approve the proposed sale, and accepted the money from Arbogast to apply on rent then due to him from respondents Johnson, the amount of the rent so due being equal to the sum of $25 or more. The evidence, we think, is quite clear that Gould never accepted money as earnest money upon any proposed sale of the lot. The evidence also tends to show that Gould delivered to Arbogast an abstract of title to the lot for the purpose of having Arbogast deliver such abstract to Johnson as a prospective purchaser thereof, but with the understanding that it was not to be so delivered until Johnson had paid at least $75 as earnest money upon the prospective sale. Plainly, the abstract was not delivered by Gould to Arbogast with a view of approving the sale. This is all of the evidence tending to show ratification by Gould of the proposed sale. We conclude that Gould never ratified or approved any contract sought to be evidenced by this writing.

Some contention is made in behalf of respondents that appellants should not be permitted to take advantage of the statute of frauds in avoiding the effect of this writing, for want of proper pleading on that subject. The answer to this contention is found in the fact that the writing claimed to evidence the contract is set out in full in the pleadings, and, of course, being for the conveyance of real estate, appears upon its face to be a contract such as is required by law to be in writing. Its legal existence as a contract also appears to be challenged in the pleadings, though the statute of frauds is not relied upon by specific reference thereto in the pleadings. Under our decisions in *Goodrich v. Rogers,*

75 Wash. 212, 134 Pac. 947; *Cushing v. Monarch Timber Co.*, 75 Wash. 678, 135 Pac. 660; and *Thompson v. English*, 76 Wash. 23, 135 Pac. 664, we think appellants are not precluded from invoking the statute of frauds in this case as against the claimed force and effect of this writing as a contract.

We conclude that the judgment of the trial court must be reversed; that appellants are entitled to a judgment against respondents quieting their title as against the claims of respondents to the lot in question; that appellants are entitled to a concellation of the writing designated "earnest money receipt" here involved, recorded in the office of the auditor of King county; and that appellants are also entitled to a judgment against respondents for the amount of the rental value of the lot in question, to wit, $15 a month from and after the 30th day of June, 1913. The judgment is reversed, and the cause is remanded to the trial court with directions to enter its judgment and decree accordingly.

CROW, C. J., MOUNT, MORRIS, and FULLERTON, JJ., concur.