[Nos. 17329-1-III; 17739-4-III; Division Three. December 7, 1999.] 18038-7-III.

WILMA RICHAU, *Individually and as Personal Representative, Respondent*, v. PETER RAYNER, ET AL., *Respondents*, MICHAEL PAGE, ET AL., *Appellants*.

*John L. Neff*; and *Eric K. Nayes*, for appellants.

*Darrell W. Scott, Michael A. Roozekrans*, and *Erika Balazs* of *Lukins & Annis, P.S.*; *George M. Ahrend*; and *Michael C. McClintock* of *Gonzaga University School of Law*, for respondents.

*Douglas S. Tingvall*, amicus curiae.

SCHULTHEIS, C.J. — These appeals stem from property owners Chris and Wilma Richau's 1996 action to reform their deed to reflect the location of a boundary line as indicated to them by the sellers, Peter and M. Linda Rayner, prior to purchase. The Richaus' action grew with the addition of disputes between the owners of the adjacent property, Michael and Sharon Page, and the Rayners. The first appeal and cross appeal raise real property questions, as well as issues relating to slander of title and whether damages are available for the wrongful filing of a lis pendens. The other two appeals concern the superior

court's finding that the Pages did not cooperate with the Rayners to carry out the judgment and therefore were in contempt of court. We affirm on all issues, save for the portion of the judgment in cause 17329-1-III that denied the Rayners' request for damages and attorney fees for the Pages' wrongful filing of a lis pendens.

In 1992 and 1993, real estate developer Peter Rayner acquired over 300 acres in north Spokane County in two separate transactions. Mr. Rayner planned to subdivide the property into large lots, between 5 and 15 acres each, for residential use, and to retain an easement over the lots for a future golf course. JUB Engineering surveyed the property and set survey monuments. Mr. Rayner did not record the exact descriptions of these lots, as surveyed, with the Spokane County auditor and assessor. At the time, Spokane County permitted developers to change lot lines and dimensions, if they maintained the same number of lots and minimum acreage. The county only required the developer to obtain a certificate of exemption.

In 1995, Mr. Rayner advertised for sale lots in "Blue Heron Estates." That fall, he showed Chris and Wilma Richau lot 9. He pointed out to them lot 9's northern boundary, based upon JUB's survey monuments. Mr. Rayner's representations in this regard were material to the Richaus, as the northeast corner of lot 9 provided, in their opinion, the best view of the Little Spokane River. They planned to build their home to take advantage of that view.

At about the same time, Mr. Rayner showed lots 7 and 8 to Michael and Sharon Page. Lot 8 was north of and adjacent to lot 9. A diagonal road crossed lots 7 and 8, and led into lot 9 and other lots to the south of lot 9. The court found that the Pages knew before they made an offer for the property, that the road crossed lots 7 and 8 and provided ingress and egress for the lots to the south. The court also found that the Richaus understood that the road was an easement for the benefit of lot 9 and the other lots.

The parties do not dispute that Mr. Rayner told them that the western portion of all three lots was subject to an easement for a proposed golf course.

The Richaus and the Pages signed earnest money agreements, but the agreements did not contain legal descriptions of the properties. Spokane County Title prepared the legal descriptions that the parties subsequently used in their deeds, based upon tax parcels as they existed in 1992. The earnest money agreements also provided that the parties would place in escrow $20,000 of their respective purchase prices, to pave the road, and that the western portions of all three lots were subject to an easement for the proposed golf course.

The Richaus' sale closed in October 1995. The Pages delayed their closing because they were concerned about the nature of the golf course easement. Mr. Rayner explored the matter with the Spokane County Building and Planning Department, which subsequently issued an administrative determination that its regulations did not permit both a golf course and a home on lots 7 and 8.

The court found that this new information caused the Rayners and the Pages to renegotiate their agreement. They set a new western boundary for lots 7 and 8 that was 150 feet west of the centerline of the road. No portion of the newly configured lots 7 and 8 was subject to the golf course easement. The portion west of this boundary was re-designated as lot 10, which Mr. Rayner retained for development as part of the planned golf course. The court found the Pages received valuable consideration from the Rayners for accepting a reduced amount of acreage. Specifically, they took the land free of the golf course easement, including 150 feet of property west of the road that had been subject to the easement under the terms of the parties' original earnest money agreement.

Unbeknownst to the Rayners and the Pages, the legal description for the road, as it appeared in their deed, relied upon an earlier survey and placed the road 34 feet west of its actual location. Since the renegotiated Rayner/Page sales

agreement designated the Pages' western boundary as lying 150 feet west of the road, the mistake in the legal description for the road added 34 feet of land to the Pages' western boundary. Also, the deed did not designate the Richaus' property, or any other, as the dominant estate benefited by the road easement across lots 7 and 8.

The legal description for the boundary line between the Richaus' and the Pages' properties also varied from the survey monuments that Mr. Rayner had indicated to the Richaus as the boundary when he first showed them the property. It placed the boundary between the Pages' lot 8 and the Richaus' lot 9, from 5 to 11 feet south of the survey monuments. The Richaus discovered the mistake when they went to site their home. In the end, they had to place the home in a different location so that it did not encroach on the disputed strip. They lost their view as a result.

In 1996, the Richaus commenced this lawsuit against the Rayners and the Pages. They sought reformation of both their deed and the Rayner/Page deed to reflect the parties' intentions. While not directly stated, it appears the Richaus' complaint concerned the dispute over the location of their northern boundary. They also requested any other relief that was "just and equitable." After the Richaus filed their action, a dispute arose concerning the Richaus' right to use the road across lots 7 and 8.

The Pages answered the Richaus' complaint, and filed a cross-claim against the Rayners. The cross-claim alleged that the Rayners had promised to convey title to the full 20 acres of lots 7 and 8, including the land subject to the golf course easement, as set forth in their original earnest money agreement. The Pages further contended the Rayners and Richaus had made false statements to third parties regarding the Pages' title. As a result, the Pages claimed they were unable to obtain a construction loan to build a home on their property and therefore lost an income tax deduction. The Pages also filed a counterclaim against the Richaus for slander of title, and a lis pendens against lot 10.

The Rayners answered and filed a cross-claim against the Pages for reformation of their deed to describe the boundary with the Richaus' property as indicated by the survey monuments. The Rayners also complained the lis pendens filed by the Pages as to lot 10 was improper and had damaged them. And, the Rayners alleged that "in addition to not accurately describing the boundaries of the real property that was intended to be conveyed to Richau, the Rayner to Richau deed also improperly describe[d] the easement granted to Richau to obtain access to the public road."

Following trial, the court denied the Richaus' request for reformation of the deeds to reflect their northern boundary line as established by the survey monuments. However, it ordered the Rayners to pay damages to the Richaus for loss of the 11- to 15-foot strip of land on their northern boundary, and for the resulting diminished view. It also ordered the Rayners to pay the Richaus' attorney fees. Neither the Richaus nor the Rayners have appealed that portion of the judgment.

With respect to the road easement, the court noted that the Pages conceded that they understood when they bought lots 7 and 8 that the existing road across their lots constituted an easement for access of the owners of lots 9 through 13. It therefore ordered reformation of the parties' deeds to include a road easement across the Pages' property. The court also held in the alternative that an implied easement existed for the benefit of lot 9. Finally, the court ordered reformation of the Pages' deed to correct the description of the road's location. The court ordered the Rayners to pave the existing road as the parties had agreed.

With regard to the Pages' claim that their purchase included the property that originally had been part of lots 7 and 8, subject to a golf course easement, the court concluded that the Rayners and the Pages had renegotiated their sale. Specifically, they agreed to reconfigure lots 7 and 8 to exclude the land Mr. Rayner hoped to develop as part of the proposed golf course, and the Pages purchased the remaining acreage free of any golf course easement.

The court also dismissed the Pages' slander of title actions. It held the Pages had not established the Rayners' and the Richaus' claims damaged them. It dismissed the Rayners' slander of title claim against the Pages because they had not shown the Pages interfered with any pending sale of lot 10. The court observed that the Pages had no justification for filing the lis pendens, but refused to award the Rayners damages for the wrongful filing.

The Pages appealed the decision respecting the easement and their western boundary; the Rayners cross appealed the court's refusal to award them damages resulting from the Pages' filing of the lis pendens against lot 10. The Pages posted a $20,000 supersedeas bond. They also moved the court to order the Rayners to post bond before they paved the road. The court dismissed the motion as frivolous, and sanctioned the Pages for bringing it. It also sanctioned the Pages for not cooperating with the Rayners in carrying out the court's orders. The Pages assign error to these latter rulings.

## 17329-1-III
## THE RAYNERS' CROSS-APPEAL
### *RAYNER v. PAGE*
#### THE LIS PENDENS

Did the superior court err when it refused to award the Rayners damages and attorney fees against the Pages for wrongfully filing a notice of lis pendens on the property the Rayners retained for the future golf course?

RCW 4.28.328 is Washington's lis pendens statute.[1] Subsection (2) of the statute concerns situations in which

---

[1]RCW 4.28.328 provides:

"(1) For purposes of this section:

"(a) 'Lis pendens' means a lis pendens filed under RCW 4.28.320 or 4.28.325 or other instrument having the effect of clouding the title to real property, however named, including consensual commercial lien, common law lien, commercial contractual lien, or demand for performance of public office lien, but does not include a lis pendens filed in connection with an action under Title 6, 60, other than chapter 60.70 RCW, or Title 61 RCW;

the claimant files a lis pendens against real property in an action that does not affect the title to that real property. In those circumstances, the claimant "is liable to an aggrieved party who prevails on a motion to cancel the lis pendens, for actual damages caused by filing the lis pendens, and for reasonable attorneys' fees in canceling the lis pendens." RCW 4.28.328(2). Subsection (3) of the statute concerns situations in which "an aggrieved party . . . prevails in defense of the action in which the lis pendens was filed[.]" RCW 4.28.328(3). In those circumstances, the statute provides for the award of actual damages to the aggrieved party unless the claimant "establishes a substantial justification for filing the lis pendens[.]" RCW 4.28.328(3). Subsection (3) also allows the court, in its discretion, to award the aggrieved party reasonable attorney fees he or she incurred in defending the action.

Here, the superior court held "the Pages had no justification in filing the lis pendens on Lot 10. They added an element to an already complicated case for no good reason that can be supported by existing case law." However, the court further held that "RCW 4.28.328 [did] not provide a basis for lis pendens liability[.]" It reasoned:

> Section (2) of that statute bases liability for filing improper lis pendens, when filed *in an action other than a real property*

"(b) 'Claimant' means a person who files a lis pendens, but does not include the United States, any agency thereof, or the state of Washington, any agency, political subdivision, or municipal corporation thereof; and

"(c) 'Aggrieved party' means (i) a person against whom the claimant asserted the cause of action in which the lis pendens was filed, but does not include parties fictitiously named in the pleading; or (ii) a person having an interest or a right to acquire an interest in the real property against which the lis pendens was filed, provided that the claimant had actual or constructive knowledge of such interest or right when the lis pendens was filed.

"(2) A claimant in an action not affecting the title to real property against which the lis pendens was filed is liable to an aggrieved party who prevails on a motion to cancel the lis pendens, for actual damages caused by filing the lis pendens, and for reasonable attorneys' fees incurred in canceling the lis pendens.

"(3) Unless the claimant establishes a substantial justification for filing the lis pendens, a claimant is liable to an aggrieved party who prevails in defense of the action in which the lis pendens was filed for actual damages caused by filing the lis pendens, and in the court's discretion, reasonable attorneys' fees and costs incurred in defending the action."

*dispute.* The court reads RCW 4.28.328 (based on what the court believes to be its legislative history) as having been created primarily in response to "common law" pro se litigants who file lis pendens to harass public officials and others.

(Emphasis added.) Under the court's analysis, the Pages' cross-claim against the Rayners stated a claim that affected title to lot 10. Therefore, subsection (2) of the lis pendens statute did not apply because the Legislature limited the application of that subsection to lis pendens filed in actions "not affecting the title to real property against which the lis pendens was filed[.]" RCW 4.28.328(2). The court did not address subsection (3) of RCW 4.28.328.

■ We agree subsection (2) does not apply here, but hold subsection (3) does and provides for an award of actual damages to the Rayners, who prevailed in the underlying action, unless the Pages showed a substantial justification for filing the lis pendens. The superior court found the Pages filed the lis pendens without justification. The evidence supports the court's finding. The Pages admitted they knew the deed issued in February 1996 conveyed only the reconfigured lots 7 and 8 to them, and they did not present any evidence that they had a legal right to the property designated as lot 10. Rather, they relied on their "belief" the property would revert to them if the Rayners did not build a golf course.

We therefore reverse and remand the case to the superior court, with directions that it determine and award the Rayners their actual damages resulting from the improper lis pendens, as provided by RCW 4.28.328(3). The superior court also should exercise its discretion in considering whether to award the Rayners their attorney fees.[2] RCW 4.28.328(3).

---

[2]The Pages argue that the Rayners did not ask the court to award them damages and attorney fees pursuant to RCW 4.28.328. The Pages are wrong. The Rayners' cross-claim prayed for damages resulting from the improper filing of the lis pendens, and also asked for attorney fees. In their trial memorandum, they cited RCW 4.28.328. And at the end of their case, the Rayners moved to conform their pleadings to the proof at trial. Clearly, the trial court considered the

We award the Rayners the reasonable attorney fees they incurred in arguing this issue on appeal, in an amount to be determined by our court commissioner. RCW 4.28.328(3); *see Puget Sound Plywood, Inc. v. Mester*, 86 Wn.2d 135, 144, 542 P.2d 756 (1975).

We affirm the remaining issues, which have no precedential value. Therefore, the remainder of this opinion will be filed for public record in accordance with the rules governing unpublished opinions.

SWEENEY and KATO, JJ., concur.

Motions for reconsideration denied February 7, 2000.

---

Rayners' claims in the context of RCW 4.28.328. The Pages' argument is therefore without merit.