[No. 33399-6-II.   Division Two.   November 7, 2006.]

SOUTH KITSAP FAMILY WORSHIP CENTER ET AL., *Appellants*, v.
DAVID WEIR ET AL., *Respondents*.

902

*Steven W. Davies*, for appellants.

*Rob J. Crichton* (of *Keller Rohrback, L.L.P.*), for respondents.

¶1 VAN DEREN, J.— South Kitsap Family Worship Center (Center), Custom Communities Corporation, Inc. (CCC), and JEH Corporation, Inc. (JEH), appeal dismissal of their breach of contract claim against David Weir and Jennifer Sansen-Weir and the trial court's award of damages and attorney fees to Weir. Because substantial evidence supports the trial court's finding that the real estate purchase and sale agreement (REPSA) was fully integrated without reference to the claimed repurchase option and that the Center knowingly conveyed by way of a statutory warranty deed all right, title, and interest in the property to Weir, we affirm the trial court's dismissal of the breach of contract claim. We also affirm its damages award and the attorney fees award under RCW 4.28.328(3), reverse the attorney

fees award under the REPSA, and award attorney fees on appeal.

## FACTS

¶2 When this dispute arose in late 2000, the Center had financial difficulties. The Center's landlord, Ted Sadtler, had a judgment against the Center for $189,080.35, and the Center needed to pay a bank loan of over $34,000.00 (Kitsap Bank loan). In addition, it owed $4,000 to one of its pastors (Leith loan). The Center's five-acre parcel of undeveloped real property had been used as collateral for the Kitsap Bank loan, and the superior court had expressly permitted Sadtler to foreclose on this property if the Center failed to pay the landlord's judgment within 150 days.

¶3 In 1996, the Center's appraiser valued the property at $550,000, anticipating that the property would be rezoned for commercial use. In October 2000, Stan Morris, the Center's senior pastor, negotiated a sale of the property to CCC and JEH (Developers) for $365,000. This sale was contingent, however, on removal of a development moratorium prohibiting the Developers' intended use. The moratorium was expected to be removed in 2000 but not before the 150-day deadline for paying the Sadtler judgment. Accordingly, Morris attempted to obtain a loan secured by the property to pay the Sadtler judgment, but he was unable to negotiate satisfactory terms through formal lending institutions.

¶4 Weir, who was a member of the Center's congregation, proposed that he loan the necessary funds to the Center. The parties reached an agreement that Weir would pay the Sadtler judgment, the Kitsap Bank loan, and the Leith loan, and that the Center would transfer title to the property to Weir but retain an option to repurchase it by August 31, 2001, for the amount Weir paid plus nine percent interest. Tracy Flood, also a Center member and an attorney, prepared a sales agreement memorializing these terms, which was signed in January 2001 by Morris and Weir but not by Weir's wife, Jennifer Sansen-Weir.

¶5 In February, the parties executed a REPSA, the terms of which differed from the sales agreement. The purchase price was $221,500, roughly the combined amounts of the Kitsap Bank loan and the Sadtler judgment. The price did not include the Leith loan. More significantly, the REPSA contained no repurchase option and paragraph 20 of the REPSA was an integration clause stating that it was the entire agreement between the parties. It also provided that the Center would transfer title to Weir with a statutory warranty deed. Paragraph 17 of the REPSA was an attorney fees provision entitling the prevailing party in a dispute arising out of the agreement to reasonable attorney fees and costs. The REPSA was signed by both Weir and Sansen-Weir. The Center transferred title to Weir and Sansen-Weir by statutory warranty deed.

¶6 In August 2001, Morris contacted Weir, asking him for the amount of accumulated interest to finalize the Center's repurchase of the property. The Center estimated that the amount due (purchase price plus nine percent interest) was $231,914.48. Weir replied that he would sell the property to the Center for "around $265,000." Ex. 9.

¶7 The Center and the Developers entered into a purchase and sale agreement based on the sales agreement between Weir and the Center. In late August, the Developers wrote a letter to the Center's counsel stating that they were the assignee purchasers of the Center's repurchase option and that they were ready to close the transaction. The Center's attorneys sent correspondence to Weir's counsel offering to tender performance. The August 31 deadline for repurchase under the sales agreement passed, and Weir refused to sell the property to the Center for the sales agreement price.

¶8 The Center sued Weir for damages and specific performance and filed a lis pendens against the property. The Developers assisted the Center with the legal fees in these actions.[1]

---

[1] Appellate counsel was not counsel at trial.

¶9 Weir counterclaimed for damages caused by the lis pendens. Weir later moved to add the Developers as plaintiffs to the suit. The trial court granted the motion because the Center assigned its rights under the sales agreement to the Developers and a judgment in the Center's favor might expose Weir to multiple or inconsistent obligations.

¶10 In 2001, Weir commissioned an appraisal which, based on the property's actual zoning, valued the property at $239,000. The Center's appraiser valued the property at $430,000 in 2002. The Center's appraisal again presumed that the property would be rezoned to permit higher density use than was then allowed.

¶11 Following a bench trial, the trial court found that the sales agreement was unenforceable under the statute of frauds[2] and that it had merged into the deed. The trial court found that Morris had read both the REPSA and the deed before signing them and understood that neither contained a repurchase option. Accordingly, it concluded that Weir was entitled to the property free of encumbrances and dismissed the Center's and the Developers' claims with prejudice. In addition, it awarded Weir reasonable costs and fees under RCW 4.84.330 and the REPSA's attorney fees provision. Finally, it awarded Weir damages caused by the lis pendens.

ANALYSIS[3]

## I. REPSA INTEGRATION CLAUSE

¶12 The Center and the Developers argue that the REPSA's integration clause is boilerplate that does not

---

[2] RCW 19.36.010.

[3] Weir asks the court to strike this appeal on the ground that the Center has failed to assign error to challenged findings of fact by number, per RAP 10.3(g), or to provide the text of the challenged findings in the body of the brief or in an appendix, per RAP 10.4(c). But the text of the trial court's findings of fact and conclusions of law is included in the Clerk's Papers; and in a 1998 General Order, we waived the strict requirements of RAP 10.3(g). *See* General Order 1998-2 of Division Two, *In re Assignments of Error* (Wash. Ct. App.), *available at* http://www.courts.wa.gov/appellate_trial_courts/. Accordingly, review of the merits of the Center's appeal is proper.

reflect the parties' intent and, therefore, should not supersede the sales agreement. They claim that the REPSA simply implemented the earlier agreement to transfer title with an option to repurchase and that the two agreements must be read together.

¶13 We review findings of fact for substantial evidence, "defined as a quantum of evidence sufficient to persuade a rational, fair-minded person that the premise is true." *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003) (citing *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000)). "If the standard is satisfied, a reviewing court will not substitute its judgment for the trial court's even though it might have resolved a factual dispute differently." *Sunnyside Valley*, 149 Wn.2d at 879-80 (citing *Croton Chem. Corp. v. Birkenwald, Inc.*, 50 Wn.2d 684, 314 P.2d 622 (1957)). We review questions of law and conclusions of law de novo. *Sunnyside Valley*, 149 Wn.2d at 880 (citing *Veach v. Culp*, 92 Wn.2d 570, 573, 599 P.2d 526 (1979)).

¶14 An agreement may be only partially integrated, notwithstanding a full integration clause, if the clause is false boilerplate because parties are not bound by incorrect statements of fact. *Denny's Rests., Inc. v. Sec. Union Title Ins. Co.*, 71 Wn. App. 194, 203, 859 P.2d 619 (1993) (citing *Emrich v. Connell*, 105 Wn.2d 551, 558, 716 P.2d 863 (1986)). *See also Black v. Evergreen Land Developers, Inc.*, 75 Wn.2d 241, 250, 450 P.2d 470 (1969) (quoting *Cook v. Vennigerholz*, 44 Wn.2d 612, 616-17, 269 P.2d 824 (1954)). On this point, we consider whether the prior agreement was the inducing and moving cause of the final contract, whether a prior agreement formed part of the consideration for the final contract, and whether the final contract was executed on the faith of the prior agreement. *See Becker v. Lagerquist Bros.*, 55 Wn.2d 425, 430, 348 P.2d 423 (1960). *See also Denny's*, 71 Wn. App. at 203. In such cases, enforcement of a boilerplate integration clause would amount to endorsement of a constructive fraud by the defendants. *Black*, 75 Wn.2d at 251.

¶15 It is undisputed that the sales agreement contained an option to repurchase in favor of the Center, that the REPSA contained no such option, and that the REPSA stated it was a fully integrated agreement. There is no claim by the Center or the Developers that Weir engaged in fraudulent or inequitable conduct to induce the Center to execute the REPSA or issue the statutory warranty deed.[4]

¶16 Substantial evidence shows that the parties intended that the REPSA supersede the sales agreement. First, the REPSA contains terms different from the sales agreement, including the purchase price. Second, while Sansen-Weir signed the REPSA, she did not sign the sales agreement. Logically, the addition of a new party to the transaction tends to indicate that it is a new transaction. *See Arbogast v. Johnson*, 80 Wash. 537, 541, 141 P. 1140 (1914) (party not bound by agreement to sell real property where that party did not sign the agreement). Finally, the REPSA specified that the Center would convey the property "by means of a Statutory Warranty Deed, free of encumbrances and/or defects." Clerk's Papers (CP) at 11. This clause cannot be dismissed as boilerplate because the Center did, in fact, convey the property by statutory warranty deed. A warranty deed conveys the property in fee simple, free of encumbrances. RCW 64.04.030; 1C KELLY KUNSCH, WASHINGTON PRACTICE: METHODS OF PRACTICE § 80.4, at 3-4 (4th ed. 1997).

¶17 The Center and the Developers rely on dicta from *Robroy Land Co. v. Prather*, 95 Wn.2d 66, 68-69, 622 P.2d 367 (1980), for the proposition that survival of the Center's repurchase option is consistent with conveying title to Weir with a statutory warranty deed. In *Robroy*, the court considered whether a right of first refusal constitutes an interest in land for purposes of the rule against perpetuities or the rules against restraints on alienation. 95

---

[4] The Center did not allege fraudulent or negligent misrepresentation by Weir, a claim that we have recently found to invalidate the doctrine of merger. *See Ross v. Ticor Title Ins. Co.*, 135 Wn. App. 182, 143 P.3d 885 (2006) (doctrine of merger did not apply where seller failed to disclose easements over the subject property, amounting to a negligent misrepresentation).

Wn.2d at 67. Noting that the policy of these rules is to promote the marketability of land, the court held that a right of first refusal gives the holder no power to restrain alienation; rather, the holder can exercise the right as a " 'preferred purchaser' " once the property owner has decided to sell. *Robroy*, 95 Wn.2d at 72. While the court distinguished a right of first refusal from an ordinary option, which gives the holder the power to compel an unwilling owner to sell, it stated that even "in an ordinary option contract, until the option is exercised, the optionee acquires no equitable estate or interest in the optioned land." *Robroy*, 95 Wn.2d at 71.

¶18 The notion that the power to compel an unwilling sale is not an interest in land is paradoxical and, in any event, was not essential to the *Robroy* decision dealing with rights of first refusal. Furthermore, the continuing viability of the court's holding in *Robroy* is questionable after our Supreme Court's decision in *Manufactured Housing Communities v. State*, 142 Wn.2d 347, 13 P.3d 183 (2000).

¶19 In *Manufactured Housing*, the Supreme Court analyzed the right of first refusal in the context of a takings claim and concluded that a law giving mobile home park tenants the right of first refusal over a sale of their park constituted an unconstitutional taking by the legislative body enacting the law. 142 Wn.2d at 374-75. In holding that a right of first refusal in the hands of the property owner is a valuable property right, the court distinguished *Robroy* on the ground that the earlier case focused on the right in the hands of the grantee. *Manufactured Hous.*, 142 Wn.2d at 366-67. In other words, *Robroy* held that the right of first refusal gave the grantee no interest in the land, but in *Manufactured Housing*, the court held that the State deprived the mobile home park owners of a property interest when it gave the right of first refusal to the tenants. Because the park owners could have, as the grantor did in *Robroy*, given a right of first refusal to another individual for consideration, this was part of the " 'bundle of sticks' " that comprised their rights of owner-

ship. *Manufactured Hous.*, 142 Wn.2d at 367. Thus, the freedom to grant a right of first refusal is an interest in land, and a title reserving this right in another lacks a fundamental attribute of ownership. *See Manufactured Hous.*, 142 Wn.2d at 368.

¶20 *Robroy* acknowledged that the holder of an ordinary option has a greater interest in land than the holder of a right of first refusal. 95 Wn.2d at 71. *See also Manufactured Hous.*, 142 Wn.2d at 368; 77 AM. JUR. 2D *Vendor and Purchaser* § 27 (2006) ("An option to purchase land is a substantial interest in the land."). Accordingly, the Center's retention of an option to repurchase the property would have encumbered Weir's title, inconsistent with the statutory warranty deed by which the Center conveyed all right, title, and interest to Weir.

¶21 Moreover, the evidence showed that the Center was aware, at least constructively, of the significance of such a deed. Morris had engaged in several real estate transactions on the Center's behalf. He had dealt with statutory warranty deeds before, and the Center had access to three different attorneys who had previously assisted the Center with real estate transactions, including one who had drafted the sales agreement.

¶22 Substantial evidence supported the trial court's finding that the Center conveyed the property to Weir by statutory warranty deed, knowing that this meant the property passed to Weir free of encumbrances. Thus, the trial court did not err in finding the REPSA fully integrated and that the Center conveyed fee simple title to Weir "without reservation or exception or any limit on alienability." CP at 1738.

¶23 We affirm the trial court's decision quieting title in Weir and dismissing the Center's and the Developers' claims.[5]

---

[5] Because Weir is entitled to fee simple ownership of the property, we do not address the argument that Weir had a duty to specifically perform the obligations under the original sales agreement.

## II. THE LIS PENDENS

¶24 The trial court awarded Weir damages and attorney fees caused by the lis pendens because "[f]or three and a half years plaintiffs have wrongly clouded Weir's title. They have no legal title to the property."[6] CP at 1738. The Center and Developers argue that the lis pendens was substantially justified and therefore ask us to reverse the damages and fee award.

¶25 Alternatively, they claim that the Developers should not be liable for the damages award because the Center's purchase and sales agreement with the Developers was contingent on Weir's compliance with the original sales agreement between Weir and the Center. But the trial court's decision to join the Developers was not based on a finding that the assignment was enforceable. Indeed, the trial court never made such a finding; rather, it found that the Center's purchase and sale agreement with the Developers created a substantial risk of exposing Weir to double or otherwise inconsistent obligations if the Developers were not a party to the claim. Even if we ultimately agree with the Center's and the Developers' effective assignment analysis, the fact remains that this was an important legal question that made the Developers a necessary party. And because the Developers were proper plaintiffs, their liability for lis pendens damages was appropriate based on the trial court's finding that "the Developers caused the Center to commence this action and to file a lis pendens." CP at 1736.

¶26 Under the lis pendens statute, claimants may be liable for damages and attorney fees to a party who prevails in defense of the action unless the claimants

---

[6] The trial court did not enter an express finding that there was no substantial justification for the lis pendens. Finding of fact 32 states that "there is no substantial justification *to allow the continuation* of the lis pendens." CP at 1738 (emphasis added). The other findings regarding the lis pendens do not mention substantial justification. But, because the trial court found liability to Weir for lis pendens damages and that the plaintiffs had "wrongly clouded Weir's title," CP at 1738, without legal title to the property, we are satisfied that it found that there was no substantial justification for the original filing. *See* RCW 4.28.328(3).

establish a substantial justification for the filing. RCW 4.28-.328(3). Damages and fees are appropriate where the claimants provide no evidence of a legal right to the property. *See Richau v. Rayner*, 98 Wn. App. 190, 198, 988 P.2d 1052 (1999). But where the claimants have a reasonable, good faith basis in fact or law for believing they have an interest in the property, a lis pendens is substantially justified. *See Keystone Land & Dev. Co. v. Xerox Corp.*, 353 F.3d 1070, 1075 (9th Cir. 2003); *Udall v. T.D. Escrow Servs., Inc.*, 132 Wn. App. 290, 303, 130 P.3d 908 (2006).

¶27 Weir argues that because the REPSA was integrated and contained no repurchase option, and because the statutory warranty deed conveyed title to him in fee simple, there was no justification for the Center's belief that it had a right to the property. We agree.

¶28 In *Richau*, the dispute involved a subdivision in which the claimants purchased lots 7 and 8. Before closing, the seller reduced the size of the lots and retained a piece of property designated as lot 10. The claimants received valuable consideration for accepting the size reduction in lots 7 and 8. When a dispute arose over the description of an easement in the deeds, the claimants filed a lis pendens on lot 10. *Richau*, 98 Wn. App. at 193. Division Three noted that the claimants presented no evidence of a legal right to the property and that their only basis was a " 'belief' " that the property would revert to them under certain conditions. *Richau*, 98 Wn. App. at 198.

¶29 In contrast, the claimant in *Udall* had a factual basis for his belief that he had a vested interest in the property. 132 Wn. App. at 303. The claimant had purchased the property at an auction for a price the auctioneer had mistakenly set $100,000 lower than the seller had authorized. *Udall*, 132 Wn. App. at 293. When the seller refused to issue the deed, the claimant sued to quiet title and filed a lis pendens. The trial court granted summary judgment in the claimant's favor. *Udall*, 132 Wn. App. at 294. We reversed and entered summary judgment in the seller's favor, holding that under the strict terms of

the deeds of trust act, RCW 61.24.050, the claimant was not entitled to the property because the sale was not completed. *Udall*, 132 Wn. App. at 293-94. Nonetheless, we refused the seller's request for lis pendens attorney fees. Because the auctioneer's receipt stated that the claimant had a vested interest in the property, the claimant "had a reasonable basis to believe that he had an interest in the property and, therefore, had 'substantial justification' to file a lis pendens when [the seller] refused to deliver the deed." *Udall*, 132 Wn. App. at 303.

¶30 Here, the Center did not have a reasonable basis to believe it had a right to the property after it conveyed it to Weir with a statutory warranty deed and under a REPSA that was fully integrated without mention of a repurchase option. It is not disputed that Weir initially agreed to purchase the property subject to the Center's repurchase option. But the trial court did not abuse its discretion in determining that the Center thereafter knowingly conveyed all legal interest in the property to Weir. As in *Richau*, the Center received valuable consideration in exchange for this conveyance. Finally, we note that when a party conveys property by warranty deed, it warrants that it "will defend the title thereto against all persons who may lawfully claim the same." RCW 64.04.030. Having given such a warranty, the Center had no substantial justification to encumber Weir's title. We affirm the trial court's damages award against the Center and the Developers.

## III. ATTORNEY FEES AT TRIAL

¶31 The Center and the Developers argue that the trial court erred in awarding attorney fees to Weir at trial. They claim that the REPSA's attorney fee provision was unenforceable both because the REPSA was a form document whose terms do not apply to the transaction and because the attorney fee provision merged into the deed. They also claim that attorney fees were inappropriate under the REPSA and RCW 4.84.330 because there was no prevailing party.

¶32 We agree with the Center and Developers that the REPSA's attorney fee provision merged into the deed. "Execution, delivery, and acceptance of the deed becomes the final expression of the parties' contract and therefore subsumes all prior agreements." *Barber v. Peringer*, 75 Wn. App. 248, 251, 877 P.2d 223 (1994) (citing *Snyder v. Roberts*, 45 Wn.2d 865, 871, 278 P.2d 348 (1955)). Purchase and sale agreement provisions generally merge into a deed, although there may be exceptions "when there are collateral contract requirements that are not contained in or performed by the execution and delivery of the deed, are not inconsistent with the deed, and are independent of the obligation to convey." *Barber*, 75 Wn. App. at 251-52 (citing *Black*, 75 Wn.2d at 248). *See also Brown v. Johnson*, 109 Wn. App. 56, 60, 34 P.3d 1233 (2001). In attempting to place this case within the exception, Weir analogizes it to *Brown*, arguing that the sales agreement is a collateral matter unrelated to the deed. But *Brown* involved a seller's misrepresentations about substantial defects in a house. 109 Wn. App. at 58. Division One held that the case was excepted from the merger doctrine and affirmed the fee award because the action for misrepresentation "[did] not relate to title or any other terms contained in the deed." *Brown*, 109 Wn. App. at 60.

¶33 When the dispute relates to title, the courts have adhered to the merger doctrine. *See Barber*, 75 Wn. App. at 252; *Barnhart v. Gold Run, Inc.*, 68 Wn. App. 417, 424, 843 P.2d 545 (1993). *Barnhart*, for example, involved an agreement to convey an easement. 68 Wn. App. at 420-21. Division Three held that this was central to the agreement to convey title and affirmed the trial court's decision denying fees. *Barnhart*, 68 Wn. App. at 424. Here, the question is whether the Center issued the deed to Weir subject to a repurchase right. This claim is central to the conveyance of title, and the merger doctrine therefore applies, barring the fee award based on the REPSA.

¶34 But, because we hold that the Center had no substantial justification for filing the lis pendens, Weir is

entitled to attorney fees under the lis pendens statute, RCW 4.28.328(3). Accordingly, we affirm the trial court's award of attorney fees and costs on the lis pendens claim, and we remand to the trial court to calculate fees and costs relating to the lis pendens only.

## IV. ATTORNEY FEES ON APPEAL

¶35 Weir has requested attorney fees on appeal. We may award fees to the substantially prevailing party on review. RAP 14.2. Here, Weir is the substantially prevailing party because he prevails on the underlying property ownership claim and the lis pendens damages and fees claims. The Center has prevailed only on its argument that the REPSA attorney fee provision does not apply due to merger with the statutory warranty deed.

¶36 We grant Weir's attorney fee request for fees on appeal subject to his compliance with RAP 18.1.

¶37 Affirmed in part and reversed in part.

HOUGHTON, C.J., and QUINN-BRINTNALL, J., concur.