199 P.3d 493 (2009)
Joel DOUGLAS and Barbara Douglas, husband and wife, d/b/a Harbor Lands Company, Appellants/Cross-Respondents,
v.
Diane G. HILL and Forrest S. Hill, husband and wife, both individually and as a marital community, Respondents/Cross-Appellants.
No. 60428-7-I.
Court of Appeals of Washington, Division 1.
January 20, 2009.
*495 J. Richard Aramburu, Aramburu & Eustis LLP, Seattle, WA, for Appellants/Cross-Respondents.
Patrick F. Hussey, Anderson Hunter Law Firm PS, Everett, WA, for Respondents/Cross-Appellants.
GROSSE, J.
¶ 1 A creditor need only establish a right to collect payment in order to void a fraudulent transfer under the Uniform Fraudulent Transfer Act (UFTA).[1] Hence, a creditor's failure to record a lien with the local auditor does not preclude a claim under the UFTA. Here, to avoid paying a judgment against her, the defendant transferred her interest in real property to her husband, from whom she is legally separated. Because the transfer was made for the purpose of avoiding a creditor, such transfer is fraudulent under the UFTA as a matter of law. We reverse the trial court.

FACTS
¶ 2 Diane Hill embezzled over $500,000 from Joel and Barbara Douglas, husband and wife, d/b/a/ Harbor Lands Company (collectively, Douglases). Diane and her husband, Forrest Hill (collectively, Hills), subsequently filed for bankruptcy in 1991. Although the bankruptcy discharged Forrest from any individual liability for the embezzled funds, Diane and the marital community remained liable. After discharge from bankruptcy, the Hills executed a separation agreement and legally separated. Diane was convicted of embezzlement and served four years in prison. When released, she continued to live with Forrest as his wife.
¶ 3 In 2000, Forrest acquired property in Clinton as his separate property by quitclaim deed from his son. Both Forrest and Diane reside on that property. In 2002, Forrest refinanced the property. He contends that in order to refinance, the brokerage firm required Diane to be on the title to the property. However, the broker's agent testified that he could not recall making such a recommendation. In any event, Forrest executed a quitclaim deed in favor of Diane and himself as husband and wife. Both Diane and Forrest signed the deed of trust refinancing the property.
¶ 4 On October 22, 2002, the Douglases filed the bankruptcy judgment in Island County Superior Court, but failed to record it with the Island County Auditor. Then in December 2002, Diane quitclaimed the Clinton property back to Forrest as his separate property. In January 2006, the Douglases sued and filed a lis pendens on the property, alleging that the December 2002 quitclaim deed was a fraudulent conveyance designed to hide assets and prevent the Douglases from collecting on their judgment against Diane and the marital community.
¶ 5 On summary judgment, the trial court initially dismissed the Douglases' action on the grounds that the property was the separate property of Forrest and thus not subject to the judgment. However, on reconsideration, the trial court found genuine issues of material fact existed as to whether the Hills had mutually rescinded the separation agreement by their subsequent actions. The trial court further held that any judgment the Douglases obtained would be reduced by a bank lien on the property in the amount of $317,900, plus interest, and the $40,000 homestead exemption,[2] leaving a balance of approximately $17,000 from which the Douglases could collect should they prevail in their action.
¶ 6 On supplemental reconsideration, the trial court again summarily dismissed the action in its entirety but this time on the basis that the Douglases had not recorded their lien with the county auditor as required by statute.[3] The court reasoned that a judgment creditor was entitled only to recover the amount it would have received but for the fraudulent conveyance of the property. *496 Since the Douglases had not recorded their lien with the county auditor as required by statute, they could not collect upon the judgment and were thus not injured by Diane's December 2002 conveyance to Forrest. The Douglases appeal.
¶ 7 The Hills moved for CR 11 sanctions and attorney fees per the lis pendens statute.[4] The trial court denied both requests in a separate order and the Hills cross-appeal.

ANALYSIS
¶ 8 The Douglases argue that they had a sufficient claim under the Uniform Fraudulent Transfer Act (UFTA) to set aside the December 2002 quitclaim deed. We agree. The Douglases secured a judgment in excess of $1.3 million on October 18, 2002, while Diane (along with Forrest) was on the title to the property. Diane did not quitclaim her interest in the property until December 12, 2002.
¶ 9 The trial court's holding that there was no claim because the judgment was not recorded is erroneous. The UFTA defines a "claim" as
a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.[[5]]
A "creditor" and a "debtor" are also defined:
"Creditor" means a person who has a claim.[[6]]
"Debtor" means a person who is liable on a claim.[[7]]
¶ 10 Thus, under the definitions provided in the UFTA, a creditor need only have a right to collect a payment to void a fraudulent transfer. Such a reading is bolstered by the language found in RCW 19.40.041, which states that a transfer may be fraudulent "whether the creditor's claim arose before or after the transfer was made or the obligation was incurred."[8]
¶ 11 Once a creditor has established that the transfer meets the pertinent definitions set forth in the UFTA, a creditor may seek relief available under that statute. RCW 19.40.071 permits a creditor to void "the transfer or obligation to the extent necessary to satisfy the creditor's claim."[9] The court in Davis v. Nielson explained:
A creditor, for the purposes of the Uniform Fraudulent Conveyances Act, is "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." RCW 19.40.010. The status of "creditor" is not lost because security has been taken for a debt, and a secured creditor is entitled to bring an action to set aside a fraudulent conveyance by his debtor. The security holder may sue to set aside, as fraudulent, a conveyance of property not covered by the security. It follows that a mortgagee is a "creditor," and a mortgagor a "debtor" within the definitions of the Uniform Fraudulent Conveyances Act in respect to the right to set aside as fraudulent a conveyance of property not secured by the mortgage. Thus, the secured creditor may proceed, as any other creditor whose claim has matured under RCW 19.40.090, to (a) set aside the conveyance or annul the obligation or (b) attach or levy upon the property conveyed.[[10]]
Thus, whether or not the judgment was recorded is irrelevant to whether the transfer was fraudulent under the UFTA. Under RCW 6.17.020(1), the judgment was good for 10 years from the date of its entry. At any time during that 10-year period, the Douglases could file the judgment with the recording officer. While the better course of conduct might have been to file at the same time, the question of recording with the auditor *497 does not become relevant until the Douglases seek to execute on their judgment.

Fraudulent Transfer
¶ 12 Captioned "Transfers fraudulent as to present and future creditors," the UFTA section 19.40.041 provides:
(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.
(b) In determining actual intent under subsection (a)(1) of this section, consideration may be given, among other factors, to whether:
(1) The transfer or obligation was to an insider;
(2) The debtor retained possession or control of the property transferred after the transfer;
(3) The transfer or obligation was disclosed or concealed;
(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) The transfer was of substantially all the debtor's assets;
(6) The debtor absconded;
(7) The debtor removed or concealed assets;
(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) The debtor transferred the essential assets of the business to a lien or who transferred the assets to an insider of the debtor.[[11]]
¶ 13 Under the UFTA, proof of actual intent must be demonstrated by clear and satisfactory evidence,[12] but all 11 badges of fraud enumerated above need not be present in order to establish this intent.[13]
¶ 14 Here, the Douglases contend that they have presented sufficient facts to support finding multiple badges of fraud:
 The transfer was made to an insider;[[14]]
 Diane remained in possession of the property;
 The lawsuit was filed 10 months before the transfer;
 Summary judgment was entered against her two months prior to the transfer;
 The property transferred represented substantially all of Diane's assets;
 Diane received no consideration for the conveyance to Forrest; and
 Diane knew she was insolvent when she transferred the property.
We agree that the Douglases have presented compelling circumstantial evidence of fraud as evidenced by the multiple badges of fraud that attached to the property transfer, providing "clear and satisfactory proof" that Diane *498 (and the marital community) had an "actual intent to hinder, delay, or defraud [a] creditor" under the UFTA.[15]
¶ 15 Further, we find that as a matter of law, the transfer was constructively fraudulent. Two sections of the UFTA are applicable to the Douglases' claim of constructive fraud. Transfers as to present and future creditors are governed by RCW 19.40.041, which provides:
A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
. . . .
(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.[[16]]
A separate constructive fraud provision in the UFTA applies to present creditors only and provides:
A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.[[17]]
¶ 16 Clearly, the Douglases were creditors of Diane Hill before she quitclaimed the property to Forrest. The Douglases secured a judgment in excess of $1.3 million on October 18, 2002, when Diane was a titled owner of the property. Further, Diane was insolvent as a result of that transfer. Additionally, there is no evidence that Diane received any consideration, reasonable or not, in exchange for her transferring this asset to her husband.

Community Property v. Separate Property
¶ 17 The Hills' contention that the real property was Forrest's separate property despite the deed to the community is without merit. The evidence clearly indicates that the property is best characterized as community. In addition to the evidence discussed above, Diane deposited her paychecks into Forrest's bank account from which the mortgage payments on the property were drawn. At least one mortgage payment was made from an account bearing both Forrest and Diane's names. Further, the Hills filed joint tax returns, both benefiting from the mortgage interest deductions. Finally, Diane sometimes made car payments on her leased car with checks written on Forrest's bank account.
¶ 18 Even if the property were not deemed community by the parties' actions, we believe its character was transformed when Forrest executed the quitclaim deed in favor of Diane to obtain refinancing. Forrest quitclaimed the property to "Forrest S. Hill and Diane G. Hill, husband and wife." And, any contention that this transaction was merely to accommodate creditors is likewise refuted by the parties' conduct.

Cross-Appeal
¶ 19 The Hills claim they are entitled to attorney fees under both the lis pendens statute, RCW 4.28.328(3), and CR 11. Under the lis pendens statute, a claimant may be liable for damages and attorney fees to a party who successfully defends an action unless the claimant establishes substantial justification for filing the action.[18] Such damages and fees are appropriate in cases where a *499 claimant provides no evidence of a legal right to the property.[19]
¶ 20 This is clearly not the case here. Under RCW 4.28.320, a party to an action that affects title to real property may file a notice of the pendency of such action with the auditor of the county in which the property is located. The trial court specifically found that the Douglases "had substantial justification for filing the lis pendens under RCW 4.28.328(3)." Moreover, an award of attorney fees under the lis pendens statute is discretionary and not mandatory.
¶ 21 Likewise the decision to impose sanctions under CR 11 is vested in the sound discretion of the trial court and will only be overturned on appeal where there is an abuse of that discretion.[20] On the record before us, the trial court's order declining to award attorney fees to the Hills was not an abuse of its discretion. We affirm the trial court's order only with regard to attorney fees. We reverse and remand for further proceedings consistent with this opinion.
WE CONCUR: LAU and AGID, JJ.
NOTES
[1] Ch. 19.40 RCW.
[2] The legislature has increased the homestead exemption to $125,000. Past increases to the homestead exemption have been found to be remedial and therefore retroactive. Former RCW 6.13.030 (1999) (amended by Laws of 2007, ch. 429 § 1).
[3] See RCW 6.13.090.
[4] RCW 4.28.328.
[5] RCW 19.40.011(3).
[6] RCW 19.40.011(4).
[7] RCW 19.40.011(6).
[8] RCW 19.40.041(a).
[9] RCW 19.40.071(a)(1).
[10] 9 Wash.App. 864, 870-71, 515 P.2d 995 (1973) (internal citations omitted) (emphasis added).
[11] RCW 19.40.041 (emphasis added).
[12] Clearwater v. Skyline Const. Co., Inc., 67 Wash.App. 305, 320-23, 835 P.2d 257 (1992).
[13] Sedwick v. Gwinn, 73 Wash.App. 879, 873 P.2d 528 (1994); RCW 19.40.041(b) (that such enumerated factors are non-exclusive and precatory is supported by the use of the word "may" in its directive to decide actual intent).
[14] See In re Barbee's Estate, 182 Wash. 644, 648, 47 P.2d 1023 (1935) (transactions to spouses warrant more scrutiny).
[15] RCW 19.40.041(a)(1).
[16] RCW 19.40.041(a)(2)(i)(ii) (emphasis added.)
[17] RCW 19.40.051(a) (emphasis added).
[18] South Kitsap Family Worship Ctr. v. Weir, 135 Wash.App. 900, 911-12, 146 P.3d 935 (2006).
[19] Weir, 135 Wash.App. at 912, 146 P.3d 935 (citing Richau v. Rayner, 98 Wash.App. 190, 198, 988 P.2d 1052 (1999)).
[20] Cascade Brigade v. Economic Dev. Bd., 61 Wash.App. 615, 619, 811 P.2d 697 (1991).